UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| MICAH ROEMEN,<br><br>             Plaintiff,<br><br>       vs.<br><br>UNITED STATES OF AMERICA, ROBERT NEUENFELDT, individually and UNKNOWN SUPERVISORY PERSONNEL OF THE UNITED STATES, individually,<br><br>             Defendants. | 4:19-CV-4006-LLP<br><br>**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS** |

Pending before the Court is a Motion to Dismiss, Doc. 8, filed by defendant, Robert Neuenfeldt ("Neuenfeldt").  For the following reasons, Neuenfeldt's Motion to Dismiss is granted in part and denied in part.

## BACKGROUND

On June 18, 2017, Plaintiff, Michal Roemen ("Plaintiff") and Morgan Ten Eyck ("Ten Eyck") were passengers in a vehicle driven by Tahlen Bourassa ("Bourassa").  Doc. 21, ¶¶ 11-13.  Plaintiff is resident of Minnehaha County, South Dakota.  Doc. 21, ¶ 1.  Neither Plaintiff, Bourassa, or Ten Eyck are Indians.  Docs. 27-29.

Plaintiff alleges that in the early morning hours of June 18, 2017, Flandreau Tribal Police Officers, along with Moody County Deputy Sheriffs, the South Dakota Highway Patrol, and the City of Flandreau Police Department stopped a vehicle driven by Bourassa.  Doc. 21, ¶ 13. Plaintiff alleges that defendant Neuenfeldt, Chief of Police for Flandreau Santee Sioux Tribe threatened to take Bourassa to jail and that Bourassa then fled in his vehicle accompanied by Plaintiff and Ten Eyck as passengers.  Doc. 21, ¶ 14.  The police report of the incident states that Neuenfeldt encountered Plaintiff when assisting Moody County Sheriff's Deputies in conducting a security check on a non-tribally-owned, rural property near Dell Rapids, South Dakota.  Doc. 29.  The Sheriff's Deputies had encountered approximately 20 people having a party on the property without permission from the property owner and issued several citations for underage

1

alcohol consumption.  Doc. 29.  The scene of the operative events was miles away from the Flandreau Santee Sioux Reservation.

Neuenfeldt and an uncertified deputy for Moody County Sheriff's Office initiated pursuit in Neuenfeldt's tribal police cruiser.  Doc. 21, ¶ 15.  The South Dakota Highway Patrol was also initially involved in the pursuit.  Doc. 21, ¶ 16.  It is alleged that "it is believed" that neither Bourassa, Plaintiff, nor Ten Eyck had committed any crimes to justify the pursuit.  Doc. 21, ¶ 17.  At the time Bourassa's vehicle was stopped, Neuenfeldt and the other officers on the scene knew the identity of the driver, Bourassa, and knew that he was actively being monitored by the South Dakota Parole Board through a GPS ankle bracelet.  Doc. 21, ¶¶ 18, 19.

The pursuit took place over thirty minutes reaching speeds in excess of 100 miles per hour on gravel roads.  Doc. 21, ¶ 20.  On two occasions, spike strips were laid out without proper authorization.  Doc. 21, ¶ 21.  Plaintiff alleges that it is believed that Neuenfeldt disregarded orders to terminate the pursuit.  Doc. 21, ¶ 25.  Once the South Dakota Highway Patrol terminated pursuit, Neuenfeldt and his passenger, a deputy from the Moody County Sheriff's Office, continued the pursuit.  Doc. 21, ¶ 26.  Just prior to the accident, spike strips were laid out and a barricade of police cars forced Bourassa to take a take a dead-end gravel road.  Doc. 21, ¶ 22.  Plaintiff alleges that Defendants "knew the dead-end road would result in an accident." Doc. 21, ¶ 23.  In the course of the pursuit, Bourassa lost control of his vehicle and rolled several times, throwing all three occupants from the vehicle.  Doc. 21, ¶ 26.  In the accident, Plaintiff sustained a serious closed head injury, pulmonary contusion, broken wrist, vertebral body factures at C1, C2, and C6 and required a halo placement.  Doc. 21, ¶ 28.  Plaintiff has sustained thousands of dollars in medical bills.  Doc. 21, ¶ 29.

On or about April 27, 2018, Plaintiff submitted an Administrative Tort Claim in the amount of $1,000,000 to the United States Department of the Interior pursuant to 28 U.S.C. § 2675.  Doc. 21, ¶ 7.  On December 3, 2018, the United States Department of the Interior denied Plaintiff's administrative claim.  Doc. 21, ¶ 8.

On January 14, 2019, Plaintiff filed a complaint against the United States of America; Robert Neuenfeldt, individually; and Unknown Supervisory Personnel of the United States, individually.  Doc. 1.  In his complaint, he alleged claims of negligence against "Defendants;" a claim against Neuenfeldt under *Bivens v. Six Unknown Named Agents of Federal Bureau of*

*Narcotics*, 403 U.S. 288, 397 (1971); a common law assault and battery claim against Neuenfeldt; and a *Bivens* action against Unknown Supervisory Personnel of the United States. Doc. 1.

On March 12, 2019, Defendant Robert Neuenfeldt filed a motion to dismiss the claims against him. Doc. 8. Therein, Neuenfeldt argues that such claims are barred by tribal sovereign immunity because the Amended Complaint alleges that Neuenfeldt was acting as the Tribe's Chief of Police when he allegedly engaged in such conduct. Doc. 9 at 7. To the extent the Court considers Neuenfeldt to be a federal employee[1] for purposes of the negligence claim alleged against him in Count I of the Amended Complaint, Neuenfeldt argues that the United States is the proper party under the Federal Tort Claims Act ("FTCA"). With regard to the *Bivens* claim alleged against him in Count II of the Amended Complaint, Neuenfeldt argues that there is nothing within *Bivens,* or any other authority relied upon by Plaintiff, to suggest that *Bivens* provides Plaintiff with a cause of action against employees of a tribal government.

On March 18, 2019, the United States Attorney filed a Certification of Scope of Employment pursuant to 28 C.F.R. § 15.4, Doc. 12, certifying that Officer Neuenfeldt was an employee of the federal government and was acting within the scope of his office or employment at the time of the alleged conduct with respect to Counts I and III of the complaint alleging negligence and common law assault and battery. The Certification further states that Officer Neuenfeldt was not acting within the scope of his employment with respect to Counts II and IV of the complaint alleging *Bivens* claims against Neuenfeldt and Unknown Supervisory Personnel of the United States for alleged violations of his Constitutional rights. The United States Attorney states in its certification that constitutional tort claims such as those alleged in Counts II and IV are not cognizable under the FTCA, and that the United States and its agencies are not proper *Bivens* defendants due to sovereign immunity. Doc. 12 at 5, n.2 (citing *Washington v. Drug Enforcement Admin.*, 183 F.3d 868, 874 (8th Cir. 1999) and *Schutterle v. United States*, 74 F.3d 846, 848 (8th Cir. 1996)).

On April 1, 2019, the Court granted an unopposed motion to amend/correct complaint and Plaintiff filed his Amended Complaint on April 9, 2019. Docs. 16, 19, 21. The allegations

[1] It is alleged that at all relevant times, Neuenfeldt was performing functions under a contract entered into by and between the Tribe and the Federal Government pursuant to 25 U.S.C. § 5321.

3

and causes of action in the Amended Complaint are virtually identical to those alleged in the initial complaint. As in the initial complaint, in the Amended Complaint, Plaintiff alleges that at all relevant times, the employees of the Police Department of the Tribe were performing functions pursuant to a Section 638 contract entered into with the United States Government which renders them employees of the United States Government. Doc. 21, ¶ 5. Plaintiff also alleges that at all relevant times, Neuenfeldt was acting as the Tribe's Chief of Police under color of state and federal law. Doc. 21, ¶ 6.

**STANDARD OF REVIEW**

Neuenfeldt has moved to dismiss Plaintiff's claims against him for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, and pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

## Rule 12(b)(1) Standard

Neuenfeldt argues that this court lacks subject matter jurisdiction over the claims against him because tribal sovereign immunity extends to his actions. The assertion of tribal "[s]overeign immunity is a jurisdictional question" which should be considered irrespective of the merits. *Rupp v. Omaha Indian Tribe*, 45 F.3d 1241, 1244 (8th Cir. 1995); *see also Pan Am. Co. v. Sycuan Band of Mission Indians*, 884 F.2d 416, 418 (9th Cir. 1989). If Neuenfeldt "possess[es] sovereign immunity, then [this court has] no jurisdiction to hear [plaintiff's claims against him]." *See Rupp*, 45 F.3d at 1244.

Rule 12 provides in part that "a party may assert the following defenses by motion: . . . lack of subject-matter jurisdiction . . . ." Fed. R. Civ. P. 12(b)(1). When moving to dismiss under Rule 12(b)(1), a party "may assert either a 'facial' or 'factual' attack on jurisdiction." *Moss v. United States*, 895 F.3d 1091, 1097 (8th Cir. 2018). A facial attack on jurisdiction "is based on the complaint alone or on undisputed facts in the record." *Harris v. P.A.M. Transp., Inc.*, 339 F.3d 635, 637 (8th Cir. 2003). In a facial attack, the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6). *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016). In a factual attack, the court considers matters outside the pleadings, and the non-moving party does not have the benefit of 12(b)(6) safeguards. *Id.* Considering "matters

4

outside the pleadings when subject matter jurisdiction is challenged under Rule 12(b)(1)" does not "convert the 12(b)(1) motion to one for summary judgment." *Harris*, 339 F.3d at 637 n.4.

> Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.  In short, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

*Osborn v. United States*, 918 F.2d 724, 730 (8th Cir. 1990).  Plaintiff, as the party invoking jurisdiction, bears the burden to establish it.  *See Green Acres Enters., Inc. v. United States*, 418 F.3d 852, 856 (8th Cir. 2005).

Neuenfeldt does not specify whether he is a factually or facially challenging subject matter jurisdiction.  Neuenfeldt did not file any supporting affidavits or other evidence factually attacking jurisdiction with regard the claims asserted against him, nor has he requested an evidentiary hearing.   Instead, Neuenfeldt argues that because Plaintiff has alleged that Neuenfeldt was acting in his capacity as the Tribe's Chief of Police at all times relevant to this action, Plaintiff's claims against him are barred by tribal sovereign immunity.

As discussed in more detail below, the fact that Neuenfeldt was acting at all times in his capacity as the Tribe's Chief of Police is insufficient, on its own, to invoke the doctrine of tribal sovereign immunity.  However, in the Court's initial review of Neuenfeldt's motion, the Court found that Plaintiff had pleaded insufficient facts establishing subject matter jurisdiction over the claims alleged against Neuenfeldt.  Because it is plaintiff's burden to establish jurisdiction, the Court ordered the parties to provide additional factual information to aid the Court it its jurisdictional analysis.   The undisputed facts provided by the parties in response to the Court's order, along with the facts alleged in the Complaint, are sufficient to permit the Court to now rule on the jurisdictional issue raised by Neuenfeldt in his motion to dismiss—that of tribal sovereign immunity.

**Rule 12(b)(6) Standard**

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the factual allegations of a complaint are assumed true and construed in favor of the plaintiff, "even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is

very remote and unlikely." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (internal quotations omitted). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (internal citations omitted). The complaint must allege facts, which, when taken as true, raise more than a speculative right to relief. *Id.; Benton v. Merrill Lynch & Co., Inc.*, 524 F.3d 866, 870 (8th Cir. 2008). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but has not 'show[n]'—'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)) (citing Fed. R. Civ. P. 8(a)(2)). "Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id. (citation omitted).*

When considering a motion to dismiss under Rule 12(b)(6), the court generally must ignore materials outside the pleadings, but it may consider "'some materials that are part of the public record or do not contradict the complaint,' as well as materials that are 'necessarily embraced by the pleadings.'" *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (citations omitted). In general, material embraced by the complaint include "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleadings." *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012).

## DISCUSSION

### I. Sovereign Immunity

Neuenfeldt argues that because it is alleged and undisputed that at all relevant times, he was acting in his capacity as the Tribe's Chief of Police, Plaintiff's claims against him are, in essence, official capacity claims and are barred by tribal sovereign immunity.

As sovereign powers, federally-recognized Indian tribes possess immunity from suit in federal court. *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978); *Alltel Commc'ns, LLC v. DeJordy*, 675 F.3d 1100, 1102 (8th Cir. 2012). In this case, Plaintiff is proceeding under *Bivens* against Neuenfeldt in his individual capacity. However, "a plaintiff cannot circumvent tribal immunity 'by the simple expedient of naming an officer of the Tribe as a defendant, rather than

the sovereign entity.'"  *Cook v. AVI Casino Enters., Inc.*, 548 F.3d 718, 727 (9th Cir. 2008); *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 270 (1997) (stating that in determining whether a state official may be liable for money damages in his official capacity, courts should not rely wholly on "the elementary mechanics of captions and pleading.").  In order to determine if sovereign immunity applies, courts must ask whether lawsuits brought against officers or employees of the tribe "represent only another way of pleading an action against an entity of which an officer is an agent."  *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985).  If the court answers that question in the affirmative, then the action is an *official* capacity action, and the individual employee is entitled to sovereign immunity.  *See id.* at 167.

An allegation, such as that made by Neuenfeldt, "that an employee [such a Neuenfeldt] was acting within the scope of his employment at the time the tort was committed *is not, on its own*, sufficient to bar a suit against that employee on the basis of tribal sovereign immunity." *See Lewis v. Clarke,* 137 S.Ct. 1285, 1288 (2017) (emphasis added).  Instead, courts must determine whether tribal sovereign immunity applies by evaluating whether the sovereign is the "real party in interest."  *Lewis*, 137 S.Ct. at 1290.  "[T]he general criterion for determining when a suit is in fact against the sovereign is the *effect* of the relief sought."  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 107 (1984).  Thus,

> [a] suit is against the sovereign if 'the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration,' or if the effect of the judgment would be 'to restrain the Government from acting or to compel it to act.'

*Pennhurst*, 465 U.S. 89 at 102, n.11 (citing *Dugan v. Rank*, 372 U.S. 609, 620 (1963)); *see also Rochester Methodist Hosp. v. Travelers Ins. Co.*, 728 F.2d 1006, 1012 (8th Cir. 1984) ("It is well established that agents, even government agents, may be subject to liability either in tort or in contract . . . '[T]he general criterion for determining when a suit is in fact against the sovereign is the *effect* of the relief sought.'").  In determining whether relief sought in a suit nominally addressed to the officer is relief against the sovereign, the Court in *Larson v. Domestic & Foreign Commerce Corp.* stated:

> In a suit against the officer to recover damages for the agent's personal actions that question is easily answered.  The judgment sought will not require action by the sovereign or disturb the sovereign's property.  There is, therefore, no jurisdictional difficulty.  The question becomes difficult and the area of

> controversy is entered when the suit is not one for damages but for specific relief: i.e., the recovery of specific property or monies, ejectment from land, or injunction either directing or restraining the defendant officer's actions. In each such case the question is directly posed as to whether, by obtaining relief against the officer, relief will not, in effect, be obtained against the sovereign. For the sovereign can act only through agents and, when the agents' actions are restrained, the sovereign itself may, through him, be restrained.

337 U.S. 682, 687-88 (1949).

Some circuits such as the Ninth and Tenth Circuit Court of Appeals have held that tribal sovereign immunity never applies to a claim for damages against a tribal officer sued in his individual capacity. *See Pistor v. Garcia*, 791 F.3d 1104, 1112 (9th Cir. 2015); *Native Am. Distrib. v. Seneca-Cayuga Tobacco Co*, 546 F.3d 1288, 1296-97 (10th Cir. 2008). In *Pistor v. Garcia*, the Ninth Circuit Court of Appeals noted that:

> As a general matter, individual or "[p]ersonal-capacity suits seek to impose personal liability upon a government official for [wrongful] actions he takes under color of . . . law," and that were taken in the course of his official duties. By contrast, official capacity suits ultimately seek to hold the entity of which the officer is an agent liable, rather than the official himself: they "'generally represent [merely] another way of pleading an action against an entity of which an officer is an agent.'" For this reason, an officer sued in his official capacity is entitled to "forms of sovereign immunity that the entity, *qua* entity, may possess." An officer sued in his individual capacity, in contrast, although entitled to certain "personal immunity defenses, such as objectively reasonable reliance on existing law," cannot claim *sovereign* immunity from suit, "so long as the relief is sought not from the [government] treasury but from the officer personally."

791 F.3d 1104, 1112 (9th Cir. 2015). The court concluded "[t]hese same principles fully apply to tribal sovereign immunity." *Id.* The court stated that "[a]lthough [t]ribal sovereign immunity extends to tribal officials when acting in their *official* capacity and within the scope of their authority, tribal defendants sued in their *individual* capacities for money damages are not entitled to sovereign immunity, even though they are sued for actions taken in the course of their official duties." *Id.* (internal quotation and citations omitted). Citing language from the Tenth Circuit Court of Appeals, the court in *Pistor* stated that:

> The general bar against official-capacity claims . . . does not mean that tribal officials are immunized from individual-capacity suits *arising out* of actions they took in their official capacities . . . . Rather, it means that tribal officials are

> immunized from suits brought against them *because* of their official
> capacities—that is, because the powers they possess in those capacities enable
> them to grant the plaintiffs relief on behalf of the tribe.

*Id.* (quoting *Native Am. Distrib.*, 546 F.3d at 1296).

In *Pistor*, the court stated that in following this rule articulated by the Tenth Circuit, it held in *Maxwell v. County of San Diego* that two paramedics employed by a tribe, who allegedly provided grossly negligent care to a shooting victim, were not entitled to tribal sovereign immunity from a state tort action brought against them in their individual capacities. *Pistor*, 791 F.3d at 1113 (citing *Maxwell*, 708 F.3d 1075, 1081, 1089-90 (9th Cir. 2013)). Conducting a "remedy-focused analysis," the court in *Maxwell* explained:

> Tribal sovereign immunity derives from the same common law principles that
> shape state and federal sovereign immunity. Normally, a suit like this
> one—brought against individual officers in their individual capacities—does not
> implicate sovereign immunity. The plaintiff seeks money damages not from the
> state treasury but from the officer[s] personally. Due to the essential nature and
> effect of the relief sought, the sovereign is not the real, substantial party in
> interest.

*Id.* (citing *Maxwell*, 708 F.3d at 1087-88). The court in *Pistor* noted that *Maxwell* cautioned that:

> In any suit against tribal officers, we must be sensitive to whether "the judgment
> sought would expend itself on the public treasury or domain, or interfere with the
> public administration, or if in effect the judgment would be to restrain the
> [sovereign] from acting, or to compel it to act."

*Id.* (citing *Maxwell*, 708 F.3d at 1088).

The *Pistor* court stated that the *Maxwell* court cited *Cook v. AVI Casino Enterprises, Inc.*, 548 F.3d 718, 725 (9th Cir. 2008), and *Hardin v. White Mountain Apache Tribe*, 779 F.2d 476 (9th Cir. 1985) as examples of lawsuits where the tribal sovereign was the real party in interest. *Id.* In *Cook*, the plaintiffs' object was to reach the public treasury through a respondeat superior ruling. *Id.* (citing *Maxwell*, 708 F.3d at 1088; *Cook*, 548 F.3d at 727). The tribe in *Cook* was thus "the 'real substantial party in interest,'" and the suit against the tribal officers in their official capacities was therefore barred by sovereign immunity principles. *Id.* (citing *Maxwell*, 708 F.3d at 1088; *Cook*, 548 F.3d at 727). The court stated that likewise, in *Hardin*, sovereign immunity barred the plaintiff from litigating a case against high-ranking tribal counsel members seeking to hold them individually liable for voting to eject the plaintiff from tribal land. *Id.*

(citing *Hardin*, 779 F.2d at 478).  To hold otherwise, the court stated, would interfere with the tribe's internal governance.  *Id.*  ("'*Hardin* was in reality an official capacity suit,' barred by sovereign immunity, because the alternative, to "[h]old[ ] the defendants liable for their legislative functions[,] would . . . have attacked 'the very core of tribal sovereignty.'") (quoting *Maxwell*, 708 F.3d at 1089).  The court in *Pistor* stated that:

> *Mawell's* caution about masked official capacity suits aside, it remains "the general rule that individual officers are liable when sued in their individual capacities."  So long as any remedy will operate against the officers individually, and not against the sovereign, there is "no reason to give tribal officers broader sovereign immunity protections than state or federal officers."

*Id.*

This Court is hesitant to conclude, as does the Ninth and Tenth Circuits, that the general principles of sovereign immunity always apply to define the boundaries of tribal sovereign immunity.  Without a doubt, a state or federal law enforcement officer sued for damages in his or her individual capacity for allegedly violating a person's constitutional rights would generally not be entitled to claim sovereign immunity, but would only be entitled only to personal immunity defenses.  *See Hafter v. Melo*, 502 U.S. 21, 30-31 (1991) ("[T]he Eleventh Amendment does not erect a barrier against suits to impose 'individual and personal liability' on state officials under § 1983.");  *Mehrkens v. Blank*, 556 F.3d 865, 869 (8th Cir. 2009) ("In *Bivens*, the Supreme Court established a right of individuals to sue individual federal agents for damages for unconstitutional conduct in [certain circumstances].").  However, as the Supreme Court recently stated in *Upper Skagit Indian Tribe v. Lundgren*, "immunity doctrines lifted from other contexts do not always neatly apply to Indian tribes."  138 S.Ct. 1649, 1654 (2018) (citing *Kiowa Tribe of Okla. v. Mfg. Techs., Inc.*, 523 U.S. 751, 756 (1998) ("[T]he immunity possessed by Indian tribes is not coextensive with that of the States.").

There is nothing in Supreme Court or Eighth Circuit precedent that compels this Court to conclude that a tribal official is precluded from invoking the defense of tribal sovereign immunity to a claim for money damages alleged against the officer in his individual capacity *if* such claim arises from the officer exercising the tribe's inherent sovereign powers.  While a money judgment would not pull from the tribal treasury, the Court concludes that permitting

such a claim would have the effect of interfering with a tribe's inherent powers of self-government.

In *Lewis v. Clarke*, the Supreme Court examined whether a member of the Mohegan Tribe of Indians of Connecticut was entitled to sovereign immunity because he was acting within the scope of his employment as a driver for the Tribe's casino when the accident occurred. 137 S.Ct. 1285 (2017). The plaintiffs had filed suit against the tribal employee in his individual capacity in Connecticut state court. *Id.* at 1290. On appeal, the Supreme Court stated that the fact that "an employee was acting within the scope of his employment at the time the tort was committed is *not, on its own*, sufficient to bar a suit against that employee on the basis of tribal sovereign immunity." *Id.* at 1288 (emphasis added). The Court applied general common-law principles of sovereign immunity[2] to evaluate the defendant's sovereign immunity defense. *Id.* at 1291. In doing so, the Court stated that it must look beyond the caption to determine whether the "remedy sought is truly against the sovereign." *Id.* at 1290.

---

[2]      The Court in *Lewis* stated that:

> The identity of the real party in interest dictates what immunities may be available. Defendants in an official-capacity action may assert sovereign immunity. An officer in an individual-capacity action, on the other hand, may be able to assert *personal* immunity defenses, such as, for example, absolute prosecutorial immunity in certain circumstances. But sovereign immunity "does not erect a barrier against suits to impose individual and personal liability."
> There is no reason to depart from these general rules in the context of tribal sovereign immunity.

Lewis, 137 S.Ct. at 1291.

Upon reading this language, one might be led to believe that the Supreme Court intends tribal sovereign immunity to be coextensive with the principals of state and federal sovereign immunity. However, as discussed above, the Supreme Court recently stated in *Upper Skagit Indian Tribe v. Lundgren*, "immunity doctrines lifted from other contexts do not always neatly apply to Indian tribes." 138 S.Ct. at 1654 (citing *Kiowa Tribe of Okla.*, 523 U.S. at 1654 ("[T]he immunity possessed by Indian tribes is not coextensive with that of the States.")). Additionally, in *Lewis*, the Court stated not that tribal sovereign immunity never extends to a tribal employee acting within the scope of his or her employment, but rather that such fact "is not, on its own," sufficient to bar a suit against the employee on the basis of tribal sovereign immunity. *See*, *Lewis*, 137 S.Ct. at 1288. That the tribal employee in *Lewis* was engaged in commercial activity of the Tribe off the reservation was an important fact that the Court noted when concluding that tribal sovereign immunity did not extend to the employee's actions. *See id.* at 1292. In fact, as noted in their separate concurrences, Justice Thomas and Justice Ginsburg expressed their view that tribal immunity should not extend at all to suits arising out of a tribe's commercial activities conducted beyond tribal territory. *Id.* at 1294.

As noted by the Supreme Court in *Upper Skagit Indian* Tribe, "[d]etermining the limits on the sovereign immunity held by Indian tribes is a grave question; the answer will affect all tribes, not just the one before us." 138 S.Ct. at 1654. Without further guidance from the Supreme Court or the Eighth Circuit Court of Appeals, the Court's analysis of existing legal authority leads it to conclude that individual capacity claims arising from a tribal officer exercising a tribe's inherent sovereign powers are barred under the doctrine of tribal sovereign immunity. However, individual capacity claims where the tribal officer is going about a tribe's commercial ventures is subject to further analysis depending on the facts of the case.

The *Lewis* Court concluded that tribal sovereign immunity did not extend to the tribal employee's actions. *Id.* at 1291. It is important to note that the tribal employee in *Lewis* was not exercising the Tribe's inherent powers of self-government. In concluding that tribal sovereign immunity did not extend to the employer's actions, the court found significant the fact that the lawsuit was brought against an employee of the tribe's casino while he was operating a vehicle on state, not tribal lands, and that any damages judgment would not operate against the Tribe. *Id.* The Court stated that this is "simply a suit against Clarke to recover for his personal actions, which 'will not require action by the sovereign or disturb the sovereign's property.'" *Id.* (quoting *Larson*, 337 U.S. at 687). In their separate concurrences, Justice Thomas and Justice Ginsburg expressed the view that tribal immunity should not extend to suits arising out of a tribe's commercial activities conducted beyond tribal territory. *Id.* at 1294.

By contrast, in *Lantry v. McMinn*, the court concluded that tribal sovereign immunity extended to a tribal police officer who was executing a tribal search warrant, signed by a tribal judge, on a house owned by a tribal member and located on the Reservation. Civ. No. 08-638, 2010 WL 11629661 at *9 (D. Nev. Mar. 4, 2010). The court acknowledged that Indian tribes have inherent power to enforce their criminal laws against tribe members. *Id.* at *8. Because the officer was acting within the scope of the Tribe's inherent authority, the court concluded that he was entitled to the benefit of tribal immunity for the claims asserted against him. *See id.* Similarly, in *Dry v. United States*, the Tenth Circuit Court of Appeals held that tribal sovereign immunity extended to actions by tribal law enforcement officers who were "act[ing] as agents of the Tribe pursuant to their inherent sovereign power to exercise criminal jurisdiction over intratribal offenses." 235 F.3d 1249, 1255 (10th Cir. 2000).

In *Stanko v. Oglala Sioux Tribe*, a *pro se* plaintiff brought a § 1983 action against various tribal officers seeking damages for violations of his constitutional and civil rights. Civ. No 17-5008, 2017 WL 4217113 (D.S.D. Sept. 20, 2017) (J. Viken). The plaintiff in *Stanko* was traveling on federally-maintained highway on reservation land when he was allegedly arrested, detained, assaulted, battered, and robbed by tribal officers. *Id.* at *2. The plaintiff filed a lawsuit, naming as defendants the Tribe and various tribal officers in their individual and official capacities. With regard to the individual capacity claims against the tribal defendants, the district court held that the plaintiff failed to state a § 1983 claim because "[a]s separate

sovereigns pre-existing the Constitution, tribes have historically been regarded as unconstrained by those constitutional provisions framed specifically as limitations on federal or state authority." *Id.* at *5 (quoting *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 56 (1978); *Talton v. Mayes,* 163 U.S. 376, 384 (1896)).

On appeal, the Eighth Circuit Court of Appeals in *Stanko* disagreed with the district court's reasoning, stating that the cases cited by the district court did "not establish that tribal officers cannot be sued individually for violating the constitutional rights of non-Indians while on tribal lands. Non-Indian United States citizens do not shed their constitutional rights at an Indian reservation's border." *Stanko v. Oglala Sioux Tribe*, 916 F.3d 694, 698 (8th Cir. 2019). However, the court affirmed the district court's decision to dismiss the plaintiff's § 1983 claim for failure to state a claim because the plaintiff failed to allege that the individual defendants were acting under color of state law, as § 1983 requires. *Id.*

While the Eighth Circuit in *Stanko* held that tribal officers can be sued individually for violating the constitutional rights of non-Indians while on tribal lands, the court did not specifically address the issue of tribal sovereign immunity, nor did it suggest that tribal sovereign immunity may never bar individual capacity suits against tribal officers, particularly when they are exercising the inherent sovereign powers of the Tribe.

Neuenfeldt cites *Whiting v. Martinez*, Civ. No. 15-3017, 2016 WL 297434 (D.S.D. Jan. 22, 2016) (J. Lange) in support of his argument that Plaintiff's claim for damages against him is precluded by tribal sovereign immunity since he was acting in his capacity as an employee of the the Tribe's police department. In *Whiting*, a *pro se* plaintiff sued for money damages a police officer employed by the Tribe's police department, a magistrate judge employed with the Tribe, and a tribal prosecutor in their individual and official capacities under 28 U.S.C. § 1331 and *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). 2016 WL 297434, at *1. The plaintiff alleged a claim against the tribal police officer for false imprisonment, alleging that he was wrongly imprisoned when the tribal officer falsely stated that he was resisting arrest. *Id.* The plaintiff also alleged that as a result of his subsequent incarceration, he was deprived of his liberty and due process in violation of the Fifth Amendment. *Id.* The plaintiff alleged that the Tribe's magistrate judge and tribal prosecutor were acting under color of law when each stated

that the plaintiff committed offenses of resisting arrest and disorderly conduct after reviewing the evidence and tribal complaint against him. *Id.*

The court in *Whiting* held that the plaintiff's claims against the defendants in their individual capacities could not stand because the facts suggested that defendants were employed by the Tribe and were acting within their official authority at all times relevant to the lawsuit. *Id.* at *3. It is important to note that two of the three defendants, the magistrate judge and the tribal prosecutor, were alleged to have been acting within their prosecutorial and judicial functions—and were thus engaged in the tribe's inherent sovereign functions. It also appears that the tribal police officer was exercising the Tribe's inherent powers to enforce its criminal laws since the plaintiff stated that he was sentenced for his offenses in tribal court. *Id.*; *see also* Civ. No. 15-3017, Docket 1.

In sum, in determining whether tribal sovereign immunity bars a claim for damages against Neuenfeldt depends on whether or not Neuenfeldt was exercising the inherent sovereign powers of the Tribe. If so, the Court concludes that permitting such a claim to proceed would have the effect of interfering with the Tribe's powers of self-government.

In the present case, it is alleged that Bourassa was driving a vehicle with Plaintiff and Ten Eyck as passengers when they were stopped by Neuenfeldt, acting in his capacity as the Tribe's Chief of Police, Moody County Deputy Sheriffs, the South Dakota Highway Patrol, and the City of Flandreau Police Department. Doc. 21, ¶¶ 6, 13. In the supplemental responses filed with the Court, the parties concurred that the stop was not on tribal land, but occurred on a road abutting a non-tribally-owned, rural property near Dells Rapids, South Dakota. Docs. 27-29. Neuenfeldt arrived at the property to assist Moody County Sheriff's Deputies responding to a security check at the property. Docs. 27-29. It is alleged that Neuenfeldt and the other officers knew Bourassa's identity at the time of the stop, that Neuenfeldt threatened to take Bourassa to jail, and that Bourassa was actively being monitored by the South Dakota Parole Board through a GPS ankle bracelet. Doc. 21, ¶¶ 14, 18-19. Plaintiff alleges that Neuenfeldt, an uncertified deputy from the Moody County Sheriff's Office, and an officer from the South Dakota Highway Patrol, all initiated pursuit once Bourassa fled in his vehicle. Doc. 21, ¶¶ 14-16.

It is undisputed that Indian tribes have the inherent power to enforce their criminal laws against Indians within the boundaries of the reservation[3].  *United States v. Lara*, 541 U.S. 193, 199 (2004); *United States v. Wheeler*, 435 U.S. 313, 323-26 (1978).  Tribes generally do not have criminal jurisdiction over non-Indians, *Oliphant v. Suquamish Indian* Tribe, 435 U.S. 191, 212 (1978), although tribal police have the authority to detain non-Indians who commit crimes within Indian country until they can be turned over to the appropriate state or federal authorities, *Duro v. Reina*, 495 U.S. 676, 696-97 (1990) ("The tribes [ ] possess [ ] traditional and undisputed power to exclude persons whom they deem to be undesirable from tribal lands. Tribal law enforcement authorities have the power to detain those who disturb public order on the reservation, and if necessary, to eject them.  Where jurisdiction to try and punish an offender rests outside the tribe, tribal officers may exercise their power to detain the offender and transport him to the proper authorities."); *United States v. Terry*, 400 F.3d 575, 579 (8th Cir. 2005) (explaining that tribal officers have the authority "to detain non-Indians whose conduct disturbs the public order on their reservation").

In the present case, Neuenfeldt encountered Plaintiff when assisting Moody County Sheriff's Deputies in conducting a security check for possible trespassing at a non-tribally-owned, rural property.  Although Neuenfeldt was acting in his capacity as a Tribal police officer at all times pertinent to this case, the Court concludes that Neuenfeldt was not exercising the inherent sovereign powers of the Tribe.  The parties agree that the stop was not on tribal land and that neither Plaintiff, Bourassa, nor Ten Ecyk were Indians.  Docs. 27-29.  Plaintiff furthermore alleges that the "pursuit was never on tribal land." Doc. 21, ¶ 33.s.  Neuenfeldt's motion to dismiss on the basis of tribal sovereign immunity is thus denied.

## II.      Federal Tort Claims Act

Neuenfeldt alleges that that to the extent the Court considers him to be a federal employee for purposes of the negligence claim against him, the United States is the proper party under the Federal Tort Claims Act ("FTCA").  Plaintiff's negligence claim is alleged against "Defendants" collectively.  Doc. 21, ¶¶ 30-39.

---

[3] The Sixth Circuit has ruled that tribes have inherent authority to prosecute their members for off-reservation conduct where necessary to protect tribal self-government or control internal relations.  *See Kelsey v. Pope*, 809 F3d 849 (6th Cir. 2016).

"The Federal Tort Claims Act is a limited waiver of sovereign immunity, making the Federal Government liable to the same extent as a private party for certain torts of federal employees acting within the scope of their employment." *Audio Odyssey, Ltd. v. United States*, 255 F.3d 512, 516 (8th Cir. 2001) (quoting *United States v. Orleans*, 425 U.S. 807, 813 (1976)). "Under the FTCA, the United States is liable, as a private person, for 'injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting under the scope of his office or employment.'" *Western Nat. Mut. Ins. Co. v. United States*, 964 F.Supp. 295, 297 (D. Minn. 1997) (quoting 28 U.S.C. § 1346(b)). The remedy provided by the FTCA for injuries resulting from the activities of [Federal] Government employees "is exclusive of any other civil action or proceeding for money damages." *United States v. Smith*, 499 U.S. 160, 162 (1991) (quoting 28 U.S.C. § 2679(b)(1)).

The Federal Tort Claims Act "accords federal employees absolute immunity from common-law tort claims arising out of acts they undertake in the course of their official duties." *Osborn v. Haley*, 549 U.S. 225, 229 (2007) (citing 28 U.S.C. § 2679(b)(1)); *see also United States v. Smith*, 499 U.S. 160, 161-62 (1991). Under the FTCA, "an action against the United States is the only remedy for injuries caused by federal employees acting within the scope of their employment." *Anthony v. Runyon*, 76 F.3d 210, 212-13 (8th Cir. 1996). The purpose of the FTCA is "to shield covered employees not only from liability but from suit" and to place the "cost and effort of defending the lawsuit . . . on the Government's shoulders." *Osborn*, 549 U.S. at 248, 252.

When a federal employee is sued, the Attorney General has the authority to certify that the employee "was acting within the scope of his office or employment at the time of the incident out of which the claim arose." 28 U.S.C. § 2679(d)(1). Under the FTCA's implementing regulations, the United States Attorney for the district court in which the civil action at issue is brought "is authorized to make the statutory certification that the Federal employee was acting within the scope of his office or employment with the Federal Government at the time of the incident out of which the suit arose." 28 C.F.R. § 15.4(a).

The statutory certification, "although subject to judicial review, is prima facie evidence that the employee's challenged conduct was within the scope of employ." *Brown v. Armstrong*, 949 F.2d 1007, 1012 (8th Cir. 1991); *see also Gutierrez de Martinez v. Lamagno*, 515 U.S. 417,

434 (1995). A plaintiff opposing the certification bears the burden of "com[ing] forward with specific facts rebutting the government's scope-of-employment certification." *Brown*, 949 F.2d at 1012; *see also Green v. Hall*, 8 F.3d 695, 698 (9th Cir. 1993) ("The Attorney General's decision regarding scope of employment certification is conclusive unless challenged. Accordingly, the party seeking review bears the burden of presenting evidence and disproving the Attorney General's decision to grant or deny scope of employment certification by a preponderance of the evidence.").

On March 18, 2019, the United States Attorney filed a Certification of Scope of Employment pursuant to 28 C.F.R. § 15.4, Doc. 12, certifying that Neuenfeldt was an employee of the federal government and was acting within the scope of his office or employment at the time of the alleged conduct with respect to Counts I and III of the Amended Complaint alleging negligence and common law assault and battery, Doc. 21.[4]

Plaintiff does not rebut the Government's scope-of-employment certification in this case. In fact, in his brief in opposition to Neuenfeldt's Motion to Dismiss, Plaintiff voices his agreement with Neuenfeldt's argument that the United States, rather than he, is the proper defendant for Plaintiff's FTCA claim. Doc. 23 at 6 ("Despite the United States being the proper defendant for Plaintiff's FTCA claim, which Plaintiff is in agreement with, Neuenfeldt fails to address the actual cause of action alleged against him and how it is improper—i.e., Plaintiff's cause of action under *Bivens*."). Because the United States is already a named defendant in this case, the proper relief is to dismiss the FTCA claim against Neuenfeldt, as he is no longer a proper defendant to that claim.

While Plaintiff's negligence claim and claim for assault and battery will be dismissed against Neuenfeldt, they will be dismissed without prejudice. The regulation which addresses withdrawal of the Certification states that "[a] certification under this section may be withdrawn if a further evaluation of the relevant facts or the consideration of new or additional evidence calls for such action." 28 C.F.R. § 15.4(c). The United States has not attempted to withdraw its Certification although it has expressed in its Answer to Amended Complaint that it:

---

[4] 25 U.S.C. § 2804(f)(1)(A) provides that while acting pursuant to a section 638 contract, "a person who is not otherwise a Federal employee shall be considered to be . . . an employee of the Department of the Interior" for purposes of the FTCA. 25 U.S.C. § 2804(f); 5 U.S.C. § 3374(c)(2).

> [D]enies paragraph 4 [of the Amended Complaint] to the extent it asserts that Flandreau Santee Sioux Tribal employees, whose actions are alleged to have contributed to and/or caused the accident at issue, are deemed federal employees pursuant to the FTCA. The United States avers that the United States Attorney for the District of South Dakota has provided a certification of scope of employment related to Officer Neuenfeldt for two counts (Counts [I] and [III]) in the original Complaint based on information then available to the United States, and the United States would refer to that filing.

Doc. 22, ¶ 4. Dismissal of the negligence and assault and battery claims against Neuenfeldt will therefore be without prejudice in the event that the United States subsequently withdraws the certification. *See Burell v. Rossamo*, Civ. No. 13-877, 2014 WL 7178012, *3-4 (M.D. Fla. Dec. 16, 2014) (dismissing claims against federal employee without prejudice in FTCA case considering possible need for later reinstatement of claims against individual if the United States withdraws certification); *Becker v. Fannin Cty., Ga.*, Civ. No. 09-0047, 2012 WL 3113908, at *7-9 (N.D. Ga. Jul. 3, 2012) (allowing resubstitution of individual defendant after United States withdraw certification in FTCA case).

### III.   *Bivens* Claim

In his *Bivens* claim, Plaintiff alleges that Neuenfeldt, acting under color of federal law, violated his rights under the Fourth Amendment to be free from unreasonable searches and seizures and deprived him of his right to life and liberty under the Fifth Amendment without due process of law. Doc. 21, ¶¶ 40-52.

In most cases, an FTCA action is the exclusive civil remedy available against government employees acting within the scope of their employment. 28 U.S.C. § 2679(b)(1). The Act includes an exception, however, for claims "brought for a violation of the Constitution of the United States." 28 U.S.C. § 2679(b)(2)(A). The exception permits plaintiffs to bring both an FTCA claim as well as a *Bivens* claim against the individual defendants. *See, e.g.*, *Sanchez v. McLain*, 867 F.Supp.2d 813, 820 (S.D. W. Vir. 2011).

In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, the Supreme Court recognized "an implied private right of action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). A *Bivens* claim requires a violation of constitutional rights "by a federal agent acting under color of his authority." *Bivens*, 403 U.S. at 389.

18

Plaintiff alleges that Neuenfeldt is a federal actor for *Bivens* purposes because he is considered a federal employee by virtue of a section 638 contract entered into by and between the Tribe and the Federal Government pursuant to the Indian Self-Determination and Education Assistance Act (referred to as "ISDEAA" or "Public Law 98-638").

In the present case, Neuenfeldt, acting in his capacity as Chief of Tribal Police, encountered Plaintiff when he responded to a call from Moody County Sheriff's department to assist them when they discovered trespassers while conducting a security check on a non-tribally-owned, rural property. Pursuant to the Indian Law Enforcement Reform Act ("ILERA"), the "Secretary may authorize a law enforcement officer of [a Federal, tribal, State, or other Government agency]" to perform any activity the Secretary may authorize under section 2803" of ILERA. 25 U.S.C. § 2804(a)(2). The Secretary has the authority to enforce state law pursuant to a request for a state or local law enforcement agency, 25 U.S.C. § 2803(8), and that authority can be delegated to an Indian tribe pursuant to a 638 Contract. *Strei v. Blaine*, Civ. No. 12-1095, 2013 WL 6243881 at *6 (D. Minn. Dec. 3, 2013) (citing *United States v. Schrader*, 10 F.3d 1345, 1350 (8th Cir. 1993)); *United States v. Zieglar*, 136 F.Supp.2d 981, 987 (D.S.D. 2001) (J. Kornmann) ("To trigger the authority granted by § 2803(8), there must be some kind of "request", made by a state/local agency, for assistance from a BIA officer or a criminal or regulatory matter which the agency has jurisdiction over."). This delegation includes authority to enter into cooperative law agreements such as the Law Enforcement Assist Agreement between Flandreau Santee Sioux Tribal Police and Moody County, South Dakota, that the Government referenced in its Certification of Scope of Employment. *See Strei*, 2013 WL 6243881, at *7 (citing 25 U.S.C. § 2803(8); *Schrader*, 10 F.3d at 1350); *see also Allender v. Scott*, 379 F.Supp.2d 1206, 1215-16 (D.N.M. 2005) (holding that section 2803(8) of ILERA authorizes the Secretary "to assist with the enforcement of State law through cooperative agreement and cross-commissioning[.]").

The fact that Neuenfeldt was acting within the scope of a section 638 contract the Tribe had with the Federal Government does not necessarily render him a federal actor for *Bivens* purposes. Neuenfeldt argues that allowing a *Bivens* action to proceed against him, a tribal law enforcement officer, would extend *Bivens* to a new category of defendant which the Supreme Court has cautioned against doing. Doc. 24 at 5-6. The Supreme Court has expressly granted

*Bivens* remedies in only three cases: *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971); *Davis v. Passman*, 442 U.S. 228 (1979); *Carlson v. Green*, 446 U.S. 14 (1980).  In *Bivens*, the Court provided a damages remedy under the Fourth Amendment to persons who had been subjected by federal officers to unreasonable searches and seizures. 403 U.S. at 397.  The Court then held under *Davis v. Passman* that the Fifth Amendment Due Process Clause gave a plaintiff a damages remedy for gender discrimination.  442 U.S. at 248. Most recently, the Court in *Carlson v. Green* held that the Eighth Amendment's Cruel and Unusual Punishments Clause gave a decedent's estate a damages remedy when federal jailers failed to treat decedent's asthma, resulting in his death.  446 U.S. at 25.

Since its decision in *Carlson v. Green*, 446 U.S. 14 (1980), the Supreme Court "has had to decide in several different instances whether to imply a *Bivens* action . . . [a]nd in each instance it has decided against the existence of such an action."  *Minneci v. Pollard*, 565 U.S. 118, 124 (2012); *see also Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001) ("Since *Carlson* we have consistently refused to extend *Bivens* liability to any new context or new category of defendants.").  The Court stated that:

> In 30 years of Bivens jurisprudence we have extended its holding only twice, to provide an otherwise nonexistent cause of action against *individual* officers alleged to have acted unconstitutionally, or to provide a cause of action for a plaintiff who lacked *any alternative* remedy for harms caused by an individual officer's unconstitutional conduct.

*Correctional Services Corp. v. Malesko*, 534 U.S. 61, 70 (2001).

In *FDIC v. Meyer*, one of the *Bivens* cases that arose subsequent to *Carlson*, the plaintiff brought a *Bivens* action against the Federal Savings and Loan Insurance Corporation claiming that discharge from his job as a senior officer of that institution deprived him of his Fifth Amendment Due Process Rights.  510 U.S. 471 (1994).  The Court declined to extend *Bivens* to permit a suit against a federal agency even though Congress had waived the agency's sovereign immunity.  *Id.* at 484-86.  In a *Correctional Servs. Corp. v. Malesko*, the Court noted that in *Meyer*, it emphasized that "the purpose of *Bivens* is to deter *the officer*," not the agency.  534 U.S. 61, 69 (2001) (citing *Meyer*, 510 U.S. at 485).  The Court reiterated its reasoning in the *Meyer* opinion that "if given the choice, plaintiffs would sue a federal agency instead of an individual who could assert qualified immunity as an affirmative defense.  To the extent

aggrieved parties had less incentive to bring a damages claim against individuals, "the deterrent effects of the *Bivens* remedy would be lost." *Id.* (citing *Meyer*, 510 U.S. at 485).

In *Minneci v. Pollard*, a prisoner at a federal facility operated by a private company filed a *pro se* complaint alleging a *Bivens* claim against several employees of the facility alleging that they had deprived him of adequate medical care in violation of the Eighth Amendment's prohibition against cruel and unusual punishment. 565 U.S. 118 (2012). The plaintiff argued that his *Bivens* action against the prison employees was permissible under *Carlson* which recognized an Eighth Amendment-based *Bivens* action by a federal prisoner against prison personnel. *Id.* at 126. The Court stated that *Carlson* was distinguishable because the federal prisoner in *Carlson* sought damages from personnel employed by the government, not personnel employed by a private firm. *Id.* The Court stated that "the potential existence of an adequate 'alternative, existing process' differs dramatically in the two sets of cases." *Id.* Whereas prisoners ordinarily cannot bring state-law tort actions against individual employees of the Federal Government because the Federal Government is substituted as a defendant under the FTCA, prisoners ordinarily can bring state-law tort actions against employees of a private firm. *Id.* The Court held that it could not imply a *Bivens* remedy in cases such as plaintiff's:

> [W]here, as here, a federal prisoner seeks damages from privately employed personnel working at a privately operated federal prison, where the conduct allegedly amounts to a violation of the Eighth Amendment, and where that conduct is of a kind that typically falls within the scope of traditional state tort law (such as the conduct involving improper medical care at issue here). . . .

*Id.* at 131.

In the present case, Court concludes that Plaintiff may proceed to litigate his *Bivens* action against Neuenfeldt. The Supreme Court has repeatedly acknowledged that "the purpose of *Bivens* is to deter individual federal officers from committing constitutional violations." *Malesko*, 534 U.S. at 70. Unlike in *Minneci*, under the facts of this case, there is no adequate alternative to deter an individual in Neuenfeldt's position from committing constitutional violations. As this Court has already ruled, state law tort claims alleged against Neuenfeldt must proceed against the United States under the Federal Tort Claims Act. As the Supreme Court stated in *Carlson*, "[b]ecause the *Bivens* remedy is recoverable against individuals, it is a more effective deterrent than the FTCA remedy against the United States." 446 U.S at 21.

The Court finds this case distinguishable from some of the other cases that have declined to extend *Bivens* liability to tribal employees acting pursuant to a section 638 contract. In *Goss v. United States*, the plaintiff brought a *Bivens* claim against a podiatrist employed by a tribal health care corporation that had a 638 contract with the federal government and was providing health services on the Navajo reservation. 353 F.Supp.3d 878, 882 (2018). The district court stated that the fact that the tribal organization works under a contract with the federal government does not transform the defendant employee into a federal employee for all purposes. *Id.* at 890. In dismissing the plaintiff's *Bivens* claim, the court stated that while the defendant was a federal employee for purposes of the FTCA and was thus protected from liability from claims related to the provision of medical services, the defendant was otherwise an employee of a tribal organization and not subject to a *Bivens* claim. *Id.* The *Bivens* claim was for negligent supervision of another employee of the tribal organization.

In *Boney v. Valline*, 597 F.Supp.2d 1167 (D. Nev. 2009), an arrestee brought a *Bivens* action against a tribal police officer, seeking damages for the officer's alleged violation of her Constitutional rights in connection with her arrest and son's death. The defendant had been dispatched to investigate a call by the plaintiff that her ex-husband was driving intoxicated on the Reservation. *Id.* at 1170. Upon arriving at the ex-husband's residence, the defendant encountered the plaintiff's ex-husband and her son. *Id.* The plaintiff's son became angry, yelling at the defendant, and the incident culminated with the defendant employing deadly force against the son. *Id.*

The plaintiff argued that the defendant in *Boney* was a federal actor or acting under color of federal law when he shot her son because the Tribe was in a section 638 contract with the BIA to provide law enforcement on the Reservation. *Id.* at 1172. One of the factors the court looked at in determining whether the federal government could be held liable for the tribal officer's conduct was whether he was performing a function that was traditionally within the exclusive prerogative of the federal government. *Id.* at 1175. Examining the facts of the case, the court found that the defendant was not performing a function exclusive to the federal government but rather was "acting under the Tribe's inherent tribal sovereignty" in enforcing its criminal laws against tribal members. *Id.* at 1178.

Contrary to the *Goss* and *Boney* cases, although Neuenfeldt was acting in his capacity as the Tribe's Chief of Police, his authority to assist with state law matters off tribal land specifically derived from the section 638 contract entered into by and between the Tribe and the Federal Government.   Tribal police do not otherwise have authority to assist with state law matters on non-tribal land.   Accordingly, Neuenfeldt was acting under color of federal, not tribal law.   *See Polk Cty. v. Dodson*, 454 U.S. 312, 317-18 (1981) (stating that a person acts under color of federal law by "exercising power possessed by virtue of [federal law] and made possible only because the wrongdoer is clothed with the authority of [federal] law.").   Because Neuenfeldt was acting under color of federal law, and because there are no alternative remedies under state law to deter an individual in Neuenfeldt's position from violating constitutional rights of others, Plaintiff may proceed in litigate his *Bivens* claim against Neuenfeldt.

**IV.**     Count IV – Second Claim for Relief for Supervisorial Responsibility for Violations of the Civil Rights Under Color of Law (*Bivens* Action)

In case there is any confusion, the Court does not find that Neuenfeldt is named as a defendant in Count IV of Plaintiff's Amended Complaint alleging a *Bivens* action for "supervisorial responsibility for violations of the civil right under color of law." Doc. 21, ¶¶ 56-63.   In this claim, Plaintiff alleges that Defendants implemented and maintained customs, policies, and/or practices to encourage the use of excessive force by Defendant Neuenfeldt" and that "Defendant participated in, courage, foster, condoned, and ratified the conduct of Defendant Neuenfeldt when [he] used excessive force in the pursuit and injuring Plaintiff Micah Roemen." Doc. 21, ¶¶ 57-58.   The Court concludes that this claim is alleged against named defendants, "Unknown Supervisory Personnel of the United States," in their individual capacities under *Bivens*.

Accordingly, it is hereby ORDERED that Neuenfeldt's Motion to Dismiss, Doc. 8, is GRANTED IN PART AND DENIED IN PART as follows:

(1) Counts I and III of the Amended Complaint alleging negligence and common law assault and battery shall be DISMISSED WITHOUT PREJUDICE against defendant Neuenfeldt; Counts I and III shall proceed against defendant United States of America; and

(2) The Motion to Dismiss Count II of the Amended Complaint alleging a *Bivens* claim against defendant Neuenfeldt is DENIED; and

(3) To the extent Neuenfeldt's motion seeks to dismiss Count IV of the Amended Complaint alleging a claim for relief for "supervisorial responsibility for violations of the civil right color of law (*Bivens* action)," his motion is DENIED for lack of standing; the allegations in Count IV allege that Plaintiff suffered an injuries as a result of customs, policies and practices of defendants Unknown Supervisory Personnel of the United States, and not as a result of customs, policies and practices of Neuenfeldt's.

Dated this 28th day of May, 2020.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
MATTHEW W. THELEN, CLERK