UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| MICAH ROEMEN, and TOM TEN EYCK, Guardian of Morgan Ten Eyck; and MICHELLE TEN EYCK, Guardian of Morgan Ten Eyck,<br><br>Plaintiffs,<br>vs.<br><br>UNITED STATES OF AMERICA, ROBERT NEUENFELDT, individually and UNKNOWN SUPERVISORY PERSONNEL OF THE UNITED STATES, individually,<br><br>Defendants. | 4:19-CV-4006-LLP<br><br>MEMORANDUM OPINION AND ORDER GRANTING MOTION TO AMEND |

Pending before the Court is a Motion to Amend Complaint filed by Plaintiffs Micah Roemen and Tom and Michelle Ten Eyck, Guardians of Morgan Ten Eyck. For the following reasons, Plaintiffs' Motion to Amend is granted.

## BACKGROUND

On January 14, 2019, Plaintiffs Micah Roemen and Tom and Michelle Ten Eyck, Guardians of Morgan Ten Eyck, filed Complaints against the Defendants United States of America; Robert Neuenfeldt, in his individual capacity; and Unknown Supervisory Personnel of the United States in their individual capacity. In their complaints, Plaintiffs allege claims of negligence against Defendants; a *Bivens* action against Defendant Neuenfeldt; a common law assault and battery claim against Defendant Neuenfeldt; and a *Bivens* claim against Unknown Supervisory Personnel of the United States. In their *Bivens* claim against Unknown Supervisory Personnel of the United States, Plaintiffs alleged that Defendants implemented and maintained customs, policies, and/or practices to encourage the use of excessive force by Defendant Neuenfeldt, and that Defendants participated in, encouraged, fostered, condoned, and ratified Defendant Neuenfeldt's use of excessive force in pursuing and injuring Micah Roemen and Michelle Ten Eyck. In addition, Plaintiffs alleged that by failing to adequately train their subordinates, Unknown Supervisory Personnel are individually liable for the constitutional violations committed by Defendant Neuenfeldt.

1

On March 12, 2019, Defendant Neuenfeldt filed a Motion to Dismiss. Therein, he argued that: 1) the Court lacked subject matter jurisdiction over the claims against him because tribal sovereign immunity[1] extended to his actions; 2) the United States is the proper party under the Federal Torts Claims Act for purposes of the negligence claim against him; 3) he could not, as a matter of law, be liable under *Bivens* as a tribal employee acting pursuant to a section 638 contract. On May 28, 2020, the Court granted in part and denied in part Neuenfeldt's Motion to Dismiss. The Court denied Neuenfeldt's Motion to Dismiss on the basis of tribal immunity; ordered Counts I and II of the complaints alleging negligence and common law assault and battery dismissed against Neuenfeldt; and denied Neuenfeldt's Motion to Dismiss the *Bivens* claim alleged against him.

On August 10, 2020, the Court issued a scheduling order and order consolidating Plaintiffs' cases under Civ. No. 19-4006. (Doc. 35). In the Court's scheduling order, the Court ordered that the parties have until October 2, 2020, to move to join additional parties and to amend the pleadings. (Doc. 35). On August 14, 2020, the Government filed its Initial Disclosures. (Doc. 66-4). On October 15, 2020, the parties filed an unopposed Motion to Amend Scheduling Order seeking to amend, among other things, the deadline for expert designation and reports for Plaintiffs to November 15, 2020 and for Defendants to February 16, 2021, and the discovery deadline to April 1, 2021. (Doc. 38). On November 2, 2020, Plaintiffs served discovery on Defendant Neuenfeldt. (Doc. 72, ¶ 3). On December 30, 2020, the Court *sua sponte* issued its Second Amended Scheduling Order with the same expert and discovery deadlines, but later pre-trial and trial dates to allow the Court sufficient time to consider any motions that might be filed. (Doc. 44). That same day, Plaintiffs received discovery responses from the United States. (Doc. 72, ¶ 2). On February 15, 2021, the Government filed a Stipulation for Third Amended Scheduling Order requesting a June 1, 2021, discovery deadline and a motions deadline (other than motions in limine) on or before July 2, 2021, which was granted by the Court. (Docs. 47; 54). The Third Amended Scheduling Order sets the discovery deadline for June 1, 2021; the motion deadline for July 2, 2021; the pretrial conference for October 1, 2021; and the jury trial for November 1, 2021. (Doc. 54).

---

[1] At the time of the pursuit, Neuenfeldt was employed as a law enforcement officer by the Flandreau Santee Sioux Tribe ("the Tribe").

2

In a letter to opposing counsel on January 20, 2021, counsel for Plaintiffs confirmed their intent to take the deposition of Robert Neuenfeldt on February 24, 2021. (Doc. 72-1). On February 23, 2021, Plaintiffs received a response from Neuenfeldt on their written discovery requests and deposed Neuenfeldt the very next day. (Doc. 72, ¶ 3). Based on testimony by Neuenfeldt at his deposition, on March 1, 2021, Plaintiffs noticed their intent to opposing counsel to amend their complaint and requested that the Government stipulate to the motion. Defendant United States of America indicated that it was opposed to Plaintiffs' Motion to Amend and on March 31, 2021, Plaintiffs filed a Motion to Amend Complaint to add claims against Defendant United States of America for negligent training, negligent supervision, and negligent retention. (Doc. 58-1). The Government opposes Plaintiffs' Motion to Amend on the basis that Plaintiffs have not shown good cause for the proposed amendment under Rule 16(b) of the Federal Rules of Civil Procedure since the amendment deadline imposed by the Court's scheduling order had passed. (Doc. 65). The Government also opposes Plaintiffs' Motion to Amend on the basis of futility. The Motion has been fully briefed by the parties and is ready for disposition.

On April 7, 2021, the United States filed an Unopposed Motion to Stay the Third Amended Scheduling Order until such time as the Court may resolve the motion to amend and the parties may thereafter submit a joint motion for an amended scheduling order. (Doc. 64). The Court granted the parties' motion to stay the remaining scheduling order deadlines on April 27, 2001. (Doc. 70).

## DISCUSSION

### I.   Good Cause

"The Federal Rules of Civil Procedure liberally permit amendments to pleadings." *Dennis v. Dillard Dep't Stores, Inc.*, 207 F.3d 523, 525 (8th Cir. 2000); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). A timely motion to amend pleadings should normally be granted under Rule 15(a) absent good reasons to the contrary. *See Popp Telcom v. American Sharecom, Inc.*, 210 F.3d 928, 943 (8th Cir. 2000). A district court appropriately denies the motion to amend if "there are compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment." *Moses.Com*

*Securities, Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1065 (8th Cir. 2005) (internal quotation marks omitted).

However, when a party seeks leave to amend a pleading outside the deadline established by the Court's scheduling order, the party must satisfy the good-cause standard of Rule 16(b) rather than the more liberal standard of Rule 15(a). *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716 (8th Cir. 2008). The "interplay between Rule 15(a) and Rule 16(b) is settled in this circuit." *Id.* Scheduling orders issued pursuant to Rule 16(b) "must limit the time to join other parties, amend the pleadings, complete discovery, and file motions." Fed. R. Civ. P. 16(b)(3)(A). When a scheduling order is issued pursuant to Rule 16(b), the "schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Therefore, "if a party files for leave to amend [a pleading] outside of the court's scheduling order, the party *must* show cause to modify the schedule." *Sherman*, 532 F.3d at 716 (quoting *Popoalii v. Correctional Med. Servs.*, 512 F.3d 488, 497 (8th Cir. 2008)) (internal quotation marks omitted). In these circumstances, "the application of Rule 16(b)'s good cause standard is not optional." *Sherman*, 532 F.3d at 716. "To permit district courts to consider motions to amend pleadings under Rule 15(a) without regard to Rule 16(b) would render scheduling orders meaningless and effectively ... read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure." *Id.* (internal quotation marks and citation omitted).

The Eighth Circuit in *Sherman* also instructed that "'[t]he primary measure of good cause is the movant's diligence in attempting to meet the [scheduling] order's requirements.'" *Id.* (quoting *Rahn v. Hawkins*, 464 F.3d 813, 822 (8th Cir. 2006), and citing Fed. R. Civ. P. 16(b), advisory committee note (1983 Amendment)). Applying this standard, the *Sherman* court found no good cause for the defendant's motion to amend to plead an affirmative defense almost eighteen months after the deadline where "no change in the law, no newly discovered facts, or any other changed circumstance made the preemption defense more viable after the scheduling deadline for amending pleadings." 532 F.3d at 718. The defendant's explanation for the delay in pleading the defense was that "at the close of discovery and during research and preparation for [Winco's] summary judgment motion... [Winco] determined the merits of the pre-emption argument." *Id.* The Eighth Circuit found this to be a concession that the defendant failed to explore the applicability of the defense in a timely fashion before the summary judgment stage of the litigation. *Id.*

4

The existence or degree of prejudice to the party opposing the modification may also be relevant under Rule 16(b), but a court need not consider prejudice if the movant has not been diligent in meeting the scheduling order's deadlines. *Sherman*, 532 F.3d at 717. The Eighth Circuit instructs that, under Rule 16(b), courts considering a belated proposed amendment should "focus in the first instance (and usually solely) on the diligence of the party who sought modification of the order." *Id.*; *see also Freeman v. Busch*, 349 F.3d 582, 589 (8th Cir. 2003) (affirming district court's denial of untimely motion to amend complaint to add punitive damages claim, even though it was filed seven weeks before the end of discovery, because plaintiff provided no reason why punitive damages could not have been earlier alleged or why motion to amend was filed so late).

In the present case, because the Scheduling Order's deadline for amending pleadings passed on October 2, 2020 and the Motion to Amend was filed on March 31, 2021, over five months past the deadline, the Court must apply the Rule 16(b) good-cause standard before considering whether an amendment is proper under Rule 15(a).

### A. Diligence

Plaintiffs seek to amend their complaint to assert claims for negligent training, supervision and retention because of facts they discovered when they deposed Defendant Neuenfeldt on February 24, 2021, after the amendment deadline had expired. Plaintiffs state that during his deposition, Neuenfeldt testified that he was never provided the BIA Enforcement Handbook which is the training manual for 638 contracted tribal police departments and its officers. (Doc. 57 at 8). The BIA Handbook details the pursuit policies that Plaintiffs allege Neuenfeldt violated on the night of the pursuit. (Doc. 57 at 10). Plaintiffs state the Handbook's code of conduct requires its officers to certify that they have read the Handbook and that Neuenfeldt testified in his deposition that he had not read the Handbook. (Doc. 57 at 13). Plaintiffs further state the Neuenfeldt never signed the certifications required by the BIA Handbook including the code of conduct, the Oath of Office, and Request for Use of Government Vehicle, and had failed to complete Indian Police Academy Bridge Training Program or jurisdiction training prior to the pursuit. (Doc. 57 at 14-15). Plaintiffs argue that without the appropriate Bridge Training, Neuenfeldt did not have authority to act as a police officer on the day of the pursuit. (Doc. 57 at 15). Plaintiffs also state that Neuenfeldt testified that prior to the pursuit, he had not been trained regarding jurisdictional issues or on high-speed pursuits. (Doc. 57 at 17). Plaintiffs argue that they were diligent in seeking

5

to amend their complaints after they discovered these new facts because they sent opposing counsel notice of their motion to amend on March 1, 2021, just after Neuenfeldt's deposition on February 24, 2021.

In opposition, the United States contends that Plaintiffs had knowledge of these claims as early as May 2, 2018, when they filed the administrative claims stating:

> It was reasonably foreseeable that officers employed by Flandreau Santee Sioux Tribe would be called upon to make decisions about initiating pursuits and would be called upon to conduct pursuits of claimed law breakers, and as a result, had a duty to adequately train, instruct, and supervise its police officers, including the police officers involved in this chase[.]

(Docs. 66-1; 66-2). The Government argues that despite this knowledge, Plaintiffs made the strategic choice to not include these allegations in their complaints filed on January 14, 2019. (Doc. 65 at 4). In addition, the Government asserts that Plaintiffs did nothing to advance discovery on these allegations until after Officer Neuenfeldt was deposed three years after the administrative complaint was filed despite having notice, knowledge, and access to witnesses to support their claims. (Doc. 65 at 11). The Government states that in the Spring of 2019, Plaintiffs issued discovery requests to various law enforcement agencies involved in the pursuit, which included the Tribe. (Doc. 65 at 10). After formal discovery began in the Fall of 2020, Plaintiffs sent one set of discovery to the United States and one set to Neuenfeldt. (Doc. 65 at 10). Plaintiffs sent no other written discovery prior to their motion. (Doc. 65 at 10). The Government states that Plaintiffs did not attempt to depose the "Self-Determination Officer' and "Self-Determination Specialist" for the BIA that it disclosed in August 2020 as having specific information regarding the 638 Contract with the Tribe. (Doc. 65 at 5, 10). In addition, on October 15, 2020, Plaintiffs identified Nicholas Cottier as a potential expert who the Government states was the former Police Chief with the Tribe who had hired and supervised Neuenfeldt. (Doc. 65 at 6). The Government contends that despite knowledge of and access to these individuals who had information regarding Plaintiffs' claims of negligent hiring, training, supervision and retention, Plaintiffs did not further develop these claims prior to the amendment deadline on October 2, 2020. The amendment deadline passed without extension and then on October 15, 2020, Plaintiffs moved to extend the remaining dates in the scheduling order, but did not request that expired deadline also be extended. (Doc. 65 at 6).

The Government argues that if the Court was to grant Plaintiffs leave to amend, any plaintiff could ignore the amendment deadline in the scheduling order and set a "critical" deposition for the end of the discovery period to allow for amendment upon "newly discovered" facts. (Doc. 65 at 11). The Government argues that "[t]o allow this substantial amendment at this juncture would 'render scheduling orders meaningless' and shift the critical burden from Plaintiffs to develop their case and be diligent in their attempt to meet the scheduling order to the Defendants." (Doc. 65 at 11).

This Court examined the good cause standard under Rule 16(b) in *Cheval International v. Smartpak Equine, LLC*, Civ. No. 14-5010, 2017 WL 1025801 (D.S.D. 2017). There, after the Court ruled on summary judgment, new counsel for the plaintiff noticed their appearances and filed a motion to amend two years after the original complaint. *Id.* at *1. The motion to amend was granted by the Court. *Id.* The plaintiff then fired her new lawyers and filed a second motion to amend to add new claims and a new defendant a little over one month after the deadline to amend had expired. *Id.* In support of her new motion to amend, the plaintiff had argued that she was unable to timely amend her complaint because the defendants did not respond to any discovery until after the deadline to amend had passed. *Id.* at *3.

In *Cheval*, this Court found that the plaintiff did not have good cause for moving to amend after the discovery deadline and denied the plaintiff's motion. The Court did not find the plaintiff's justification for the delay to be credible since the plaintiff had filed the motion to amend six days before she received the discovery responses from the defendants. *Id.* The Court found that the plaintiff had notice of the new claims and the defendant well in advance of the deadline, highlighting an email by the plaintiff to defense counsel approximately 17 months earlier in which the plaintiff discussed amending the complaint to add the proposed claims and the new defendant. *Id.* The Court noted that the deadline for filing substantive motions was approaching in approximately two weeks and that the discovery deadline had already passed. *Id.* at *4. Because the Court found that the plaintiff was aware of the new claims and defendant and could have, if she had been diligent, requested the amendments well before the deadline to add claims and parties, it concluded that good cause was lacking and denied her motion to amend. *Id.*

This Court also had an occasion to examine the good cause standard under Rule 16(b) in *Lee v. Driscoll*, Civ. No. 14-4146, 2016 WL 1337248 (D.S.D. Mar. 30, 2016). In *Lee*, the

defendants had filed a motion to dismiss and motion for summary judgment on the motion deadline date. *Id.* at *1-2. On that same day, the plaintiffs filed a motion to amend a little over 10 months after the deadline for amendments had passed. *Id.* at *4. In support of their motion to amend, the plaintiffs argued that the facts supporting their new claim were not known until the defendants' depositions were taken four months after the deadline for amendment of the pleadings had passed. *Id.* at *3. The Court denied the plaintiff's motion. The Court found that the main problem with the plaintiffs' timing argument was their concession that they considered pursuing the new claim after depositions, but did not know whether it was a viable claim until further research was done. *Id.* The Court stated:

> Had the [plaintiffs] been diligent the research would have been performed sooner after the depositions, before discovery was closed and certainly before the summary judgment stage of the litigation. There is no explanation for why they waited over six months to further review and propose the potential claim. The [plaintiffs] have not shown that they promptly and diligently moved to present their proffered amendments after they became aware of the underlying facts possibly giving rise to the new claim at the depositions in June of 2015.

*Id.* at *4. As a result, the Court concluded that the plaintiff lacked "good cause" for the untimely assertion of the claim and denied the plaintiffs leave to amend. *Id.*

Unlike the plaintiffs in *Cheval* and *Lee*, the Court finds that Plaintiffs in the present case have been diligent in meeting the deadlines set forth in the scheduling order. Contrary to the arguments posited by the United States, the Court is unwilling to conclude that Plaintiffs had knowledge of their proposed claims simply because they referenced them in their administrative complaints. Although Plaintiffs stated in their administrative complaints that the United States had duty to adequately train, instruct, and supervise its police officers, it is clear that Plaintiffs lacked a factual basis for such claims at that time since absent from their complaints were any facts detailing how the United States had breached these duties. The Court will not find that Plaintiffs are precluded from now amending because of attempting to necessarily state all possible claims at the administrative level. A failure by Plaintiffs to present such claims administratively may have rendered the Court without jurisdiction to hear them should Plaintiffs develop a factual basis for these claims during discovery.

The Court also finds that Plaintiffs have been diligent in their discovery efforts. Although the Complaint was filed on January 14, 2019, Defendant Neuenfeldt filed a motion to dismiss that

raised, among other issues, the defense of tribal sovereign immunity. The parties delayed their Rule 26(f) planning meeting until the Court issued its Memorandum Opinion and Order on May 28, 2020, granting in part and denying and part Neuenfeldt's motion to dismiss. (Doc. 31). Neuenfeldt then filed his answer to the complaint on June 18, 2020. (Doc. 32). The parties filed their discovery report on July 20, 2020, which set forth an approximately 2.5-month deadline (October 2, 2020) in which to amend pleadings and join additional parties and an initial discovery deadline of March 1, 2021. (Doc. 34). The discovery report proposed by the parties was adopted by the Court in its Scheduling Order. (Doc. 35).

It is evident that during the initial period of discovery, Plaintiffs were focused on identifying their experts. On October 15, 2020, after the deadline to amend pleadings had already passed, Plaintiffs moved to extend the deadline for expert disclosures to November 16, 2021, and the discovery deadline to April 1, 2021. (Doc. 38). The United States agreed to the extensions, but asked Plaintiffs to provide the names of their planned experts. (Doc. 67 at 5-6). In response, Plaintiffs identified five individuals that they planned to disclose as experts and a sixth category of experts—treating physicians. (Doc. 66-6). On November 16, 2020, Plaintiffs disclosed 46 named experts including 4 individuals and 42 individually-named treating physicians. (Doc. 66-7). Although the parties do not reference this in their briefs, the Court notes for the record that based on the Court's own experiences and observations in mid-November 2020, daily COVID-19 cases in South Dakota were at their peak.[2] In the Fall of 2020, Plaintiffs also sent a set of written discovery to the United States and to Neuenfeldt individually. The United States received responses to their discovery requests from the United States on December 30, 2020. (Doc. 72, ¶ 2).

Depositions of many of the officers other than Neuenfeldt involved in the pursuit appear to have taken place in early January 2021. On January 20, 2021, counsel for Plaintiffs sent the Government a letter memorializing the parties' agreement to depose certain parties in mid-to-late February 2021, including Neuenfeldt on February 24, 2021. (Doc. 72-1). These depositions were

---

[2] In its Motion to Extend the Second Amended Rule 16 Scheduling Order, the Government acknowledged that "[t]he pandemic most notably has delayed access to documents and witnesses necessary to respond to written discovery, delayed depositions and plans to travel to meet with or depose expert and fact witnesses, as well as providing normal logistical issues given remote working situations and various restrictions on gatherings in cities or in governmental offices." (Doc. 47).

scheduled to take place well before the expiration of the June 1, 2021, discovery deadline set forth in the Court's Third Amended Scheduling Order. Plaintiffs received responses to their discovery requests from Neuenfeldt on February 23, 2021, and deposed Neuenfeldt the very next day. (Doc. 72, ¶ 3). Based on testimony by Neuenfeldt during his deposition, Plaintiffs gave notice of their intent to amend the complaint on March 1, 2021, and asked the Government to stipulate to the motion. On March 8, 2021, counsel for the United States advised that it would not consent to the amendment and on March 31, 2021, Plaintiffs filed with the Court their Motion for Leave to Amend.

In all, the Court finds that Plaintiffs were diligent in their discovery efforts and promptly sought leave to amend once they discovered factual basis to support their proposed claims.

### B. Prejudice

The Government also argues that it would be prejudiced by the amendment because it would result in a significant postponement in trial. (Doc. 65 at 12). The Government also attests that nearly all of the relevant law enforcement officers and participants in the pursuit have been deposed and that in preparing for, defending, or questioning those witnesses, the United States prepared its strategy to solely defend conduct related to Neuenfeldt's actions on June 17 and June 18, 2017. (Doc. 65 at 12).

"The burden of proof of prejudice is on the party opposing the amendment." *Roberson v. Hayti Police Dep't*, 241 F.3d 992, 995 (8th Cir. 2001). "Delay alone is not a reason in and of itself to deny leave to amend; the delay must have resulted in unfair prejudice to the party opposing the amendment." *Id.* This prejudice to the non-movant is weighed against the prejudice to the movant in not allowing the amendment. *See Bell v. Allstate Life Ins. Co.*, 160 F.3d 452, 454 (8th Cir. 1998). The Eighth Circuit has said that "[m]otions that would prejudice the nonmoving party by requiring a re-opening of discovery with additional costs, a significant postponement of the trial, and a likely major alteration in trial tactics and strategy are particularly disfavored." *Kozlov v. Assoc. Wholesale Grocers, inc.*, 818 F.3d 380, 395 (8th Cir. 2016) (internal quotations and citation omitted).

The Court concludes that allowing the amendment will not cause the Government unfair prejudice. The discovery deadline and motion deadline did not expire prior to the Court granting

the parties' motion to stay the deadlines. While the deadline to designate experts has expired, the Court will permit the parties to designate a new deadline by which to disclose any experts that may be needed to address Plaintiffs' new claims. Although the Government has already deposed most of the officers involved in the high speed pursuit, the Government does not argue that any of these individuals has information regarding the training, supervision and retention of Neuenfeldt such that they would need to be deposed again. The Court finds no real impediment to the Government's ability to develop a defense to these new claims and concludes that Plaintiffs would suffer prejudice if the Court was to deny them leave to amend.

## II.   Futility
### A.   Violation of Federal Directives vs. State Law

In 1946, Congress passed the FTCA, a limited waiver of the United States' sovereign immunity, to permit persons injured by federal employees to sue the United States for damages in federal district court. *Molzof ex rel. Molzof v. United States*, 502 U.S. 301 (1992). In relevant part, the FTCA's liability and jurisdiction-conferring language provides that federal district courts have "exclusive jurisdiction" over claims against the United States for money damages for "personal injury or death caused by the negligent or wrongful act or omission" of federal employees "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with [applicable state law]." *Mader v. United* States, 654 F.3d 794, 797 (8th Cir. 2011); 28 U.S.C. § 1346(b)(1); *see also* 28 U.S.C. § 2674.

The Government argues that it has not waived its sovereign immunity with regard to Plaintiffs' proposed claims for negligent training, supervision and retention because such claims are based on a violation of federal directives rather than state law. The Government contends that the Court therefore lacks subject matter jurisdiction over Plaintiffs' proposed claims and asks that the Court deny Plaintiffs leave to amend on the basis of futility.

"Futility is always a basis to deny leave to file an amended complaint." *See A.H. v. St. Louis Cty, Missouri*, 891 F.3d 721, 730 (8th Cir. 2018) (citing *United States ex re. Roop v. Hypoguard USA, Inc.*, 559 F.3d 818, 824 (8th Cir. 2009)). An amendment is futile "if the proposed amended complaint does not establish a court's subject matter jurisdiction over the action" or fails to state a claim upon which relief may be granted. *See Walker v. Harmon*, Civ. No. 15-5037, 2016 WL 5376185, at *4 (D.S.D. Sept. 26, 2016) (citing *Am. Ins. Co. v. St. Judge Medical, Inc.*, 597

11

F.Supp.2d 973, 979 (D. Minn. 2009) (citing *Longie v. Spirit Lake Tribe*, 400 F.3d 586, 588 n.3 (8th Cir. 2005)); *Cornelia I. Crowell GST Trust v. Possis Med., Inc.*, 519 F.3d 778, 782 (8th Cir. 2008). Matters outside the pleading may not be considered when conducting a futility analysis under Rule 12(b)(6) other than some public records, materials that do not contradict the complaint, or materials that are "necessarily embraced by the pleadings." *See Noble Systems Corp. v. Alorica Cent., LLC*, 543 F.3d 978, 982 (8th Cir. 2008); *Wheeler v. Hruza*, Civ. No. 08-4087, 2010 WL 2231959, at *2 (D.S.D. Jun. 2, 2010). Further, "a motion to amend should be denied on the merits only if it asserts clearly frivolous claims or defenses." *Becker v. Univ. of Neb. at Omaha*, 191 F.3d 904, 908 (8th Cir. 1999) (internal quotations omitted); *Popp Telcom v. Am. Sharecom, Inc.*, 210 F.3d 928, 944 (8th Cir. 2000) ("[I]n deciding whether to permit a proffered amendment, a court should not consider the likelihood of success unless the claim is 'clearly frivolous.'").

In support of its futility argument, the Government cites to *Sorace v. United States*, 788 F.3d 758 (8th Cir. 2015). In *Sorace*, the plaintiff brought a FTCA claim against the United States based upon a drunk driving accident on the Rosebud Sioux Indian Reservation in South Dakota. *Id.* at 762. The plaintiff alleged that the Rosebud Sioux Tribe's Police Department had received numerous calls on the date of the accident advising that the driver was drunk and driving his pickup truck erratically through Mission, South Dakota. *See id.; see also Sorace v. United States*, Civ. No. 13-3021, 2014 WL 2033149 (D.S.D. May 16, 2014). Despite receiving these calls prior to the accident, the plaintiff's complaint alleges that the Rosebud Sioux Tribe Police Department failed to take action to locate and arrest the driver before the collision that killed two people and injured two children. *Id.*

The Government in *Sorace* brought a motion to dismiss, arguing that the plaintiff failed to state a claim under the FTCA because a private person would not be liable for such conduct under the laws of South Dakota. *Id.* at 763. The district court agreed. The court held that under South Dakota law, the Government had no affirmative duty to prevent the misconduct of a third party such as the drunken driver in that case. *Id.* at 764. The district court also held that even if it did not apply the negligence standard for a private citizen, the plaintiff had failed to establish that the Tribal police owed a "special duty" to the decedents and those injured in the accident. *Id.* The district court rejected the plaintiff's argument that the tribal regulations and handbooks it cited,

including the BIA Law Enforcement Handbook, established a special duty because the regulations did not demonstrate an intent to protect a particular class of persons. *Id.* at 765.

The Court of Appeals in *Sorace* affirmed the district court's decision on appeal. Citing to *Klett v. Pim*, 965 F.2d 587, 589 (8th Cir. 1992) (citation omitted), the court stated that "federally imposed obligations, whether general or specific, are irrelevant to our inquiry under the FTCA, unless state law imposes a similar obligation upon private persons." *Id.* at 765. The Court held that the manuals, laws and regulations cited by the plaintiff, including the BIA Law Enforcement Handbook, failed to create a private cause of action under the FTCA. *Id.* In addition, the Court of Appeals affirmed the district court's conclusion that the handbooks and tribal codes cited by the plaintiff did not establish a special duty because there was no indication that they were intended to protect any particular class of persons. *Id.*

The Court finds that the facts of this case are quite different from those in *Sorace*. Unlike the plaintiff in *Sorace*, Plaintiffs in the present case do not argue that the sections of the BIA Law Enforcement Handbook cited to by Plaintiffs create a private right of action against the United States. Instead, Plaintiffs argue that failure by Neuenfeldt to comply with various provisions of the BIA Law Enforcement Handbook, including those regarding high-speed pursuits and pursuits outside tribal jurisdiction, is a result of the United States' negligence in training, supervising, and retaining Neuenfeldt—its employee for purposes of the FTCA. South Dakota courts clearly recognize claims against private employers for negligent training, supervision and retention. *See Kirlin v. Halverson*, 758 N.W.2d 436, 454 (S.D. 2008). Because the Government would be liable under South Dakota law as a private person for this alleged conduct, the Court rejects the Government's argument that such claims are barred by sovereign immunity on this basis.

### B. Violation of Discretionary Function Exception

The Government also contends that Plaintiffs' proposed claims for negligent training, supervision, and retention are futile because they fall within the discretionary function exception to the FTCA. Although the FTCA waives the Government's sovereign immunity for the negligence of Government agents, the waiver is subject to exceptions. *Croyle by and through Croyle v. United States*, 908 F.3d 377, 381 (8th Cir. 2018). Under 28 U.S.C. § 2680(a), the Government may not be sued for the "exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government."

13

"If the FTCA's discretionary function exception applies, it is a jurisdictional bar to suit." *Walters v. United States*, 474 F.3d 1137, 1139 (8th Cir. 2007).

A two-part test governs the discretionary function exception. *See Riley v. United States*, 486 F.3d 1030, 1032 (8th Cir. 2007) (citing *Berkovitz v. United States*, 486 U.S. 531, 536 (1988)). "First, the conduct at issue must be discretionary, involving 'an element of judgment or choice.'" *Id.* (citation omitted). If a federal statute, regulation, or policy prescribes a course of action for an employee to follow, the discretionary function exception will not apply. *Berkovitz*, 486 U.S. at 536. "If the challenged action is discretionary, however, the next inquiry is whether the government employee's judgment or choice was 'based on consideration of social, economic, and political policy.'" *Herden v. United States*, 726 F.3d 1042, 1047 (8th Cir. 2013) (internal quotations and citation omitted). "Not all discretionary decisions are immune from suit because the Congressional purpose of the exception is "to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Id.* (citing *United States v. Varig Airlines*, 467 U.S. 797, 814 (1984)). In *United States v. Gaubert*, the Supreme Court established that:

> When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion. For a complaint to survive a motion to dismiss, it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime. The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis.

499 U.S. 315, 324-25 (1991).

In their proposed amended complaint, Plaintiffs allege that Defendant United States "allow[ed] [Neuenfeldt] to carry a gun and operate a motor vehicle without sufficient training and supervision contrary to the manual set forth as Bureau of Indian Affairs Office of Justice Services Law Enforcement Handbook 3rd Edition, as well as contrary to other regulations requiring training and supervision set for in the United States Code." (Doc. 58-1, 81). Specifically, Plaintiffs allege that the Government did not fulfill its mandatory obligation under the Law Enforcement Handbook to present the Law Enforcement Handbook to Neuenfeldt. Plaintiffs argue that the Law Enforcement Handbook also required the Government to provide "Field Training and Evolution

14

Program Training" and that it failed to provide such training to Neuenfeldt. In their brief, Plaintiffs also argue that Neuenfeldt failed to complete Indian Police Academy Bridge Training as required by the Law Enforcement Handbook. (Doc. 57 at 14). Plaintiffs allege that the Government failed to have Neuenfeldt execute a Law Enforcement Code of Conduct and failed to provide Neuenfeldt jurisdictional training or training on arrest and pre-arrest procedures, and procedures regarding pursuit, use of force, or traffic stops.

In opposition, the Government argues that it has discretion whether or not to give a copy of the Law Enforcement Handbook to Tribal law enforcement officers operating under a 638 contract. The Government contends that while it is required to give a copy of the Law Enforcement Handbook to the Tribe, the Indian country law enforcement program in this case, it cites to the Declaration of Joel Chino Kaydahzinne as evidence that it fulfilled this obligation. *See* 25 C.F.R. § 12.14. In addition, the Government argues that it had no authority over the hiring, supervision, retention and training of tribal police officers such as Neuenfeldt who provide services under a 638 contract. The Government argues that its authority was limited to monitoring and reassumption and that these functions are discretionary. Although 25 C.F.R. § 12.12 provides that "Indian country law enforcement programs that receive Federal funding and/or commissioning will be subject to a periodic inspection or evaluation to provide technical assistance, to ensure compliance with minimum Federal standards, and to identify necessary changes or improvements to BIA policies," the Government contends that the manner and timing in which the BIA performs such inspections is discretionary because 25 C.F.R. § 12.2 contains no specific or mandatory directive specifying how, when or the means through which the OJS inspects or evaluates a Tribal law enforcement program. The Government argues that even if its inspection identifies noncompliance, its only recourse is to provide guidance and technical assistance, and if noncompliance continues, it may initiate the regulatory reassumption process. 25 C.F.R. § 900.246. The Government contends that because there is no mandatory directive that would have required the BIA to pursue reassumption under the facts of this case, such conduct falls within the discretionary function exception.

Based on the pleadings, the Court cannot say at this juncture that Plaintiffs' proposed claims are clearly futile. The Court finds that evaluating the merits of whether the discretionary function exception applies in this case will require the Court to look beyond the pleadings to the

affidavit cited by the Government as well as the Law Enforcement Handbook, which, according to the copy on record in support of Plaintiffs' motion to amend, is 670 pages in length. Plaintiffs allege in their proposed amended complaint that the Government failed to provide training as required in the Law Enforcement Handbook. Browsing the Handbook on record, the Court notes that Section 6-1 provides that "[a]ll individuals hired for the position of law enforcement officer/special agent must successfully complete the approved Basic Law Enforcement training Program prior to appointment as a law enforcement officer/special agent . . . or request a Certification of waiver of training from the Deputy Director, OJS." (Doc. 61-1 at 547). It appears that the Basic Police Officer Training Program is conducted at the Indian Police Academy. (Doc. 62-1 at 548). The completion requirement of a basic law enforcement training course is also emphasized in 25 C.F.R. § 12.35 which provides that "[l]aw enforcement personnel of any program funded by the [BIA] must not perform duties until they have successfully completed a basic law enforcement training course prescribed by the Director [and] the Director will also prescribe mandatory supplemental and in-service training course." The Handbook provides that prior to receiving their certification as a police officer by the Office of Justice Services, all newly hired law enforcement personnel must also complete an IPA approved pre-service training curriculum which covers such topics as use of force and deadly force policy and pursuit driving. (Doc. 62-1 at 548). Section 3-15 provides that "recruits will be trained, evaluated and supervised by a properly trained Bureau of Indian Affairs (BIA)-Office of Justice (OJS) Field Training Officer (FTO). Field training is a process by which an officer recruit receives formal on the job instruction for special and designated purposes. Therefore, upon completion of the BIA-OJS Basic Police Officer Training Program (BPOTP), the officer recruit will be placed into a FTEP and assigned a FTO to provide formal instruction and evaluation of the recruit." (Doc. 61-1). Section 6-05 provides that "[t]raining provided will be documented and records will be kept for each individual at the District/Agency and Indian Police Academy." (Doc. 62-1 at 559).

At this juncture, based on the facts alleged in the proposed amended complaint, the Court is unable to conclude that Plaintiffs proposed claims clearly fall within the discretionary function exception.

Accordingly, it is hereby ORDERED that Plaintiffs' Motion to Amend Complaint (Doc. 56) is GRANTED.

Dated this 9th day of June, 2021.

BY THE COURT:

_[signature]_
Lawrence L. Piersol
United States District Judge

ATTEST:
MATTHEW W. THELEN, CLERK

_[signature]_