UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| MICAH ROEMEN, and TOM TEN EYCK, Guardian of Morgan Ten Eyck; and MICHELLE TEN EYCK, Guardian of Morgan Ten Eyck,<br><br>Plaintiffs,<br>vs.<br><br>UNITED STATES OF AMERICA, ROBERT NEUENFELDT, individually and UNKNOWN SUPERVISORY PERSONNEL OF THE UNITED STATES, individually,<br><br>Defendants. | 4:19-CV-4006-LLP<br><br>**MEMORANDUM OPINION AND ORDER DENYING MOTION FOR RECONSIDERATION** |

Pending before the Court is a Motion for Reconsideration filed by Defendant United States of America. (Doc. 144). For the following reasons, the Motion for Reconsideration is denied.

## BACKGROUND

On September 27, 2022, this Court issued its Memorandum Opinion and Order granting the Government's motion to dismiss Count II of the Second Amended Complaint alleging assault and battery and Count V alleging negligent supervision, training, hiring and retention, and denying the motion to dismiss Plaintiffs' claim for negligence alleged in Count I. In allowing the negligence claim to proceed forward, the Court rejected the Government's argument that it was entitled to sovereign immunity under the discretionary function exception to the Federal Tort Claims Act ("FTCA"). The Court cited to section 2-24-09 of the BIA Law Enforcement Handbook entitled "Pursuits-Beyond Jurisdiction or Initiated by Another Agency" and subsection (B)(3) which provides that "officers will discontinue pursuits initiated by another jurisdiction when the pursuit continues outside their jurisdiction, unless officer safety becomes a consideration." The Court found that this section of the Law Enforcement Handbook was applicable because the pursuit was initiated by another jurisdiction, Trooper Kurtz with the South Dakota Highway Patrol, miles from the Flandreau Santee Sioux Indian Reservation. The Court concluded that section 2-24-09(B)(3) of the Handbook mandated that Officer Neuenfeldt discontinue pursuit because

officer safety was essentially a non-issue once Trooper Kurtz was evaded by Bourassa during the pursuit.

On October 14, 2022, the Government filed a motion pursuant to Federal Rules of Civil Procedure 54(b) or 59(e) to request reconsideration of the Court's decision denying its motion to dismiss Plaintiffs' negligence claim alleged in Count I. The Government argues that reconsideration is an appropriate remedy because the Court made a decision outside the adversarial issues presented by the parties. (Doc. 145 at 3400). The Government acknowledges that Plaintiffs cited to section 2-24-09(B)(3) in their sur-reply to the motion to dismiss, but did so in order to argue that this section was not applicable to the case at bar because the pursuit was never within reservation boundaries. The Government argues that "[t[he United States could not examine the exact language of [section 2-24-09(B)(3)] that the Court focused upon when Plaintiffs argued it did not apply at all." (Doc. 150 at 3510). The Government argues that it was not given an opportunity to discuss the language and applicability of section 2-24-09(B)(3), whether section 2-24-09(B)(3) was a federal directive that precluded application of the discretionary function exception, nor discuss facts relating to officer safety which, it argues, justified Officer Neuenfeldt's continued pursuit. (Doc. 145 at 3400-01; 150 at 3510). The Government addresses these issues in its Motion for Reconsideration.

The Motion for Reconsideration has been fully briefed and is ready for disposition.

## STANDARD OF REVIEW

### I.     Federal Rule of Civil Procedure 59(e)

The Federal Rules of Civil Procedure do not include a "motion to reconsider." However, pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, a party may move "to alter or amend a judgment." Fed. R. Civ. P. 59(e). Such motions must be filed no later than 28 days after the entry of judgment." *Id.* The word "judgment" as used in the Federal Rules of Civil Procedure is defined in Rule 54(a). Fed. R. Civ. P. 54(a); *Balla v. Idaho State Bd. of Corrections*, 869 F.2d 461, 466 (9th Cir. 1989); Wright & Miller, *Federal Practice and Procedure*, § 2651 (4th ed. 2022). Rule 54(a) defines a judgment to "include[] a decree and any order from which an appeal lies." Fed. R. Civ. P. 54(a).

In the present case, the Court denied the Government's motion to dismiss Plaintiffs' negligence claim, concluding that the Government did not retain immunity for such a claim under the discretionary function exemption to the FTCA. Whether Rule 59(e) permits the Court to reconsider its order denying the Government sovereign immunity under the FTCA depends upon whether it is an "order from which an appeal lies." The Court's order is a non-final order. *See Pena-Calleja v.* Ring, 720 F.3d 988, 989 (8th Cir. 2013) (citing *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 467 (1978) ("Federal appellate jurisdiction generally depends on the existence of a decision by the District Court that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.")). Whether or not a non-final order addressing sovereign immunity is immediately appealable depends upon whether the immunity "is an 'immunity from suit rather than a mere defense to liability.'" *Argonaut Great Cent. Ins. Co. v. Audrain Cnty. Join Commc'ns,* 781 F.3d 925, 929-30 (8th Cir. 2015) (citing *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985)).

The parties have not cited any caselaw from the Eighth Circuit Court of Appeals holding that an order denying federal sovereign immunity is immediately appealable under the collateral order doctrine and the circuits appear to be somewhat divided on this issue. *Compare Houston Comm. Hosp. v. Blue Cross & Blue Shield of Tex., Inc.,* 481 F.3d 265, 280 (5th Cir. 2007) (citing *Pullman Const. Indus., Inc. v. United States,* 23 F.3d 1166 (7th Cir. 1994)) ("We hold that federal sovereign immunity is not subject to immediate review under the collateral order doctrine."), *Alaska v. United States,* 64 F.3d 1352, 1356 (9th Cir. 1995) ("Because federal sovereign immunity is a defense to liability rather than a right to be free from trial, the benefits of immunity are not lost if review is postponed."), *Pullman Const. Indus., Inc. v. United States,* 23 F.3d 1166 (7th Cir. 1994) ("Federal sovereign immunity today is nothing but a condensed way to refer to the fact that monetary relief is permissible only to the extent Congress has authorized it, in line with Art. I, § 9, cl. 7. . . ."), *Al Shimarti v. CACI Premier Tech., Inc.,* Civ. No. 19-1328, 775 F.App'x 758, 760 (4th Cir. 2019) (unpublished) ("[W]e have never held, and the United States government does not argue, that a denial of sovereign immunity . . . is immediately reviewable on interlocutory appeal."), *with In re World Trade Center Disaster Site Litigation,* 521 F.3d 169, 191 (2d Cir. 2008) (dicta) ("We are not convinced that *Pullman* or its progeny counsel us to disregard the statements of the Supreme Court that sovereign immunity encompasses a right not to be sued."). Because the Eighth Circuit does not appear to have addressed the issue of whether a denial of federal sovereign

immunity is immediately appealable and because Plaintiffs have, in their response, addressed the Government's motion for reconsideration under Rule 54(b) of the Federal Rules of Civil Procedure rather than Rule 59(e), the Court will analyze the Government's motion under Rule 54(b).

## II.    Federal Rule of Civil Procedure 54(b)

Federal Rule of Civil Procedure 54(b) allows parties to seek reconsideration of interlocutory orders and authorizes the district court to "revise[ ] at any time" "any order or other decision . . . [that] does not end the action." *Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) (citing Fed. R. Civ. P. 54(b)); *Westinghouse Elec. Co. v. United* States, Civ. No. 4:03-0861, 2009 WL 881605, at *4 (E.D. Mo. Mar. 30, 2009) ("Under Federal Rule of Civil Procedure 54(b), an interlocutory order 'may be revised at any time before the entry of judgment adjudicating all the claims and all the parties' rights and responsibilities.'"); (Fed. R. Civ. P. 54(b) ("[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.").

"The standard to be applied in considering a motion to reconsider under Rule 54(b) is not clear, but it is typically held to be less exacting than would a motion under Federal Rule of Civil Procedure 59(e), which is in turn less exacting than the standards enunciated in Federal Rule of Civil Procedure 60(b)." *Jones v. Casey's Gen. Stores*, 551 F.Supp.2d 848, 854 (S.D. Iowa 2008) (internal citations and quotations omitted); *Planned Parenthood Minnesota, N.D. v. Daugaard*, 946 F.Supp.2d 913, 925 (D.S.D. 2013). A court may reconsider an interlocutory order to "correct any clearly or manifestly erroneous findings of fact or conclusions of law." *Jones*, 551 F.Supp.2d at 854 (internal quotations and citation omitted). "Reconsideration may be granted if the earlier decision misunderstood a party, made a decision outside the adversarial issues, or because of a 'controlling or significant change in law' since the issues were submitted to the court." *Westinghouse Elec.*, 2009 WL 881605, at *4 (citing *Singh v. George Washington Univ.*, 383 F.Supp.2d 99, 101 (D.D.C. 2005)); *see also Bank v. Wanakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185 (7th Cir. 1990) (citation omitted) (stating that motions for reconsideration are appropriate when the court has patently misunderstood a party, has made a decision outside the adversarial issues presented by the parties, has made an error not of reasoning but of apprehension,

or if there was a controlling or significant change in the law of facts since the submission of the issue to the court); *Sharma v. Shipman*, Civ. No. 6:21-3151, 2022 WL 2678517, at *1 (W.D. Mo. Jul. 11, 2022) (citing *Trickey v. Kaman Indus. Tech. Corp.*, 2011 WL 2118578, at *2 (E.D. Mo. 2011)); *Washam v. BNSF Ry. Co.*, Civ. No. 3:19-00231, 2022 WL 989037, at *2-3 (E.D. Ark. Mar. 31, 2022); *Anderson v. Wells Fargo Fin. Inc.*, Civ. No. 4:11-00085, 2012 WL 12871957, at *1 (S.D. Iowa Mar. 29, 2012); *Merry Maids, L.P. v. WWJD Enterprises, Inc.*, Civ. No. 8:06-0036, 2006 WL 2040245, at *1 (D. Neb. Jul. 20, 2006). A motion to reconsider under Rule 54(b), however, may not serve as a vehicle to identify facts or raise legal arguments which could have been, but were not, raised or adduced during the pendency of the motion for which reconsideration was sought. *See Hagerman v. Yukon Energy Corp.*, 839 F.2d 407, 414 (8th Cir. 1988) (citing *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir.), *as amended*, 835 F.2d 710 (7th Cir. 1987) (stating that Rule 54(b) motions cannot "be employed as a vehicle to introduce new evidence that could have been adduced during the pendency of the . . . motion . . . nor serve as the occasion to tender new legal theories for the first time.")). While district courts have considerable discretion in deciding whether to reconsider an interlocutory order under 54(b), *Well's Dairy Inc. v. Travelers Indem. Co. of Ill.*, 336 F.Supp.2d 906, 909 (N.D. Iowa 2004), they also have an interest in judicial economy and ensuring respect for the finality of its decisions—values which would be undermined if it were to routinely reconsider its interlocutory orders, *Discount Tobacco Warehouse, Inc. v. Briggs Tobacco & Specialty Co.*, Civ. No. 3:09-5078-DGK, 2010 WL 3522476, at *2 (W.D. Mo. Sept. 2, 2010).

## DISCUSSION

There has been no judgment in this case adjudicating all the claims and all the parties' rights and responsibilities and the Government argues that reconsideration is appropriate under Rule 54(b) because the Court made decisions outside the adversarial issues presented by the parties. Although the parties acknowledge that Plaintiffs referred to section 2-24-09(B)(3) in their sur-reply brief on the motion to dismiss, the Government contends that "Plaintiffs did not argue that this section was mandatory and failed to analyze the exact language of 2-24-09(B)(3) . . . but instead argued '[t]his section does not apply to the case at bar.'" The Government argues in support of its motion for reconsideration that "[t]he United States could not examine the exact language [of section 2-24-09(B)(3)] that the Court focused upon [in its opinion] when Plaintiffs

argued it did not apply at all." (Doc. 150 at 3510). The United States argues that the following issues were outside the adversarial issues argued by the parties and should be reconsidered by the Court in light of the parties briefing on these issues: 1) whether section 2-24-09(B)(3) applies at all under the facts of this case; (2) whether section 2-24-09(B)(3) was a federal directive that precluded application of the discretionary function exception; and (3) whether "officer safety" concerns existed that justified Officer Neuenfeldt continued pursuit of Bourassa's vehicle once he had evaded Trooper Kurtz with the South Dakota Highway patrol.

## I.    Did the Government waive its objections to the applicability of section 2-24-09(B)(3)?

The parties acknowledge that Plaintiffs had argued in their sur-reply that section 2-24-09 "does not apply to the case at bar" because the pursuit in this case was not one that "'extended beyond the reservation line . . . [but rather] began miles from the reservation and never came close to the boundaries of the reservation." However, Plaintiffs argued in the alternative that "even if it did, [Neuenfeldt] should have discontinued the pursuit for safety considerations pursuant to subsection (B)(3)"—the same subsection the Court relied upon in its ruling. (Doc. 126 at 3161). In its brief in response to Plaintiffs' sur-reply filed on May 27, 2022, the Government did not address subsection (B)(3). (*See* Doc. 129).

An argument can be made that the Government had an opportunity to respond to the applicability of section 2-24-09(B)(3) when Plaintiffs raised that section in their sur-reply and may not do so now on a motion for reconsideration. *See Hagerman v. Yukon Energy Corp.*, 839 F.2d 407, 414 (8th Cir. 1988) (citing *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir.), *as amended*, 835 F.2d 710 (7th Cir. 1987) (stating that a motion to reconsider under Rule 54(b) may not serve as a vehicle to identify facts or raise legal arguments which could have been, but were not, raised or adduced during the pendency of the motion for which reconsideration was sought). However, the Court concludes that certain issues regarding the interpretation and applicability of section 2-24-09(B)(3) were not covered in detail by the parties and to the extent they were not, the Court will address these issues now on reconsideration.

## II.    Interpretation and applicability of section 2-24-09(b)(3)

Section 2-24-09(B)(3) provides that "officers will discontinue pursuits initiated by another jurisdiction when the pursuit continues outside their jurisdiction, unless officer safety

6

becomes a consideration." The Government argues that it did not have an opportunity to discuss the exact language of section 2-24-09(B)(3) on the motion to dismiss—particularly whether the pursuit conduct occurred outside Officer Neuenfeldt's jurisdiction. To the contrary, the Government addressed at length in its briefing on the motion to dismiss whether Neuenfeldt was acting outside his jurisdiction. Plaintiffs had argued that Neuenfeldt did not have jurisdiction to engage in law enforcement functions under the Mutual Assist Agreement because, they argued, the circumstances surrounding the party at the rural property did not constitute an emergency and because Neuenfeldt's assistance was not specifically requested. In response, the Government argued that Neuenfeldt was acting within his jurisdiction because he was on the scene pursuant to the Mutual Assist Agreement with Moody County and thus had all powers and authority conferred upon Moody County officers. (Doc. 97 at 2481). As a result, the Government argued that section 2-24-09 "discussing pursuit 'Beyond Jurisdiction' or 'Initiated by Another Agency' did not control. (Doc. 97 at 2481).

The Government argues for the first time in its motion for reconsideration that the Court should apply the definition of "jurisdiction" found in the Law Enforcement Handbook to subsection (B)(3). The Glossary of Terms contained in the Law Enforcement Handbook defines the term "jurisdiction" as "[t]he sphere of authority and territorial limits within which any particular authority may be exercised." The Government argues that applying this definition to section 2-24-09(B)(3), "there is no dispute that Neuenfeldt had the sphere of authority to enforce state law within the territorial boundaries of the County through the Assist Agreement, albeit temporarily." (Doc. 145 at 3410). The Government argues that as a result, Officer Neuenfeldt was not "outside [his] jurisdiction" under the Handbook's definition and the facts of this case." (Doc. 145 at 3410).

Arguably, the Government had an opportunity in its motion to dismiss to raise the "jurisdictional" definition of the Law Enforcement Handbook but did not do so. However, the Court acknowledges that Plaintiffs had argued in the first instance that subsection (B)(3) of section 2-24-09 of the Law Enforcement Handbook did not apply and does grant this portion of Defendant's Motion to Reconsider to the extent that the Court has now considered Defendant's arguments on this subsection.

Subsection (B)(3) of section 2-24-09 provides that "officers will discontinue pursuits initiated by another jurisdiction when the pursuit continues outside their jurisdiction, unless officer safety becomes a consideration." It is important to note that the term "jurisdiction" is used twice in subsection (B)(3). If the Court were to apply the Law Enforcement Handbook definition of "jurisdiction" to construe the meaning of these terms as the Government urges the Court to do, subsection (B)(3) would provide that "officers will discontinue pursuits initiated by another 'sphere of authority and territorial limits within which any particular authority may be exercised' when the pursuit continues outside their 'sphere of authority and territorial limits within any particular authority may be exercised,' unless officer safety becomes a consideration." This construction not only yields a nonsensical result, but is inconsistent with the reading of section 2-24-09 as a whole.

The entirety of section 2-24-09 of the Law Enforcement Handbook is as follows:

2-24-09    PURSUITS-BEYOND JURISDICTION OR INITIATED BY ANOTHER AGENCY

> A. A pursuit may extend beyond the reservation line, but primary control of the pursuit must be relinquished as soon as practical to police personnel of the entered jurisdiction if their policy allows them to enter the pursuit.
>
> B. The following guidelines govern joining a pursuit initiated by another jurisdiction:
>    1. Officers must follow LE Handbook Section 2-24-02, Authorization for Pursuit.
>    2. An officer may participate in a pursuit initiated by another jurisdiction to assist with officer safety concerns but should request that the pursuit be terminated if conditions pose a safety hazard.
>    3. OJS officers will discontinue pursuits initiated by another jurisdiction when the pursuit continues outside their jurisdiction, unless officer safety becomes a consideration.
>
> C. Regardless of the location of the pursuit, or the lead agency, officers will act consistent with the procedures and guidelines, established in this directive.
>
> D. When accompanied by civilian passengers, officers may not engage in a pursuit. If a civilian is in the police vehicle at the beginning of a pursuit, the officer will turn the pursuit over to another officer, or leave the civilian at a safe location.

The title of section 2-24-09 provides that the section covers: (1) pursuits beyond jurisdiction, and (2) pursuits initiated by another agency.  Subsection (A) discusses pursuits beyond jurisdiction which is described therein as "a pursuit . . . beyond the reservation line."  Subsection (B) discusses pursuits initiated by another agency.  Subsection (C) says "regardless of the location of the pursuit, or the lead agency, officers shall act consistent with the procedures and guidelines established in this directive."

Subsection (B)(3) of section 2-24-09 provides that "officers will discontinue pursuits initiated by another jurisdiction when the pursuit continues outside their jurisdiction, unless officer safety becomes a consideration."  Construing these terms in light of section 2-24-09 as a whole leads the Court to conclude that in the first instance, the term "jurisdiction" refers to "another agency" and in the second instance, the term "jurisdiction" refers to territory "beyond the reservation line."  It is undisputed that the pursuit at issue in this case was "initiated by another agency"—the South Dakota Highway Patrol—and "continued outside [Neuenfeldt's] jurisdiction"—i.e. "beyond the reservation line."  Accordingly, the Court concludes that section 2-24-09(B)(3) applies under the facts of this case.

### III.    Mandatory federal directive

In order for Officer Neuenfeldt's conduct to fall within the discretionary function exception, the Court must first find that section 2-24-09(B)(3) is mandatory federal directive. The Government argues that the Court considered section 2-24-09(B)(3) *sua sponte* and that the Government therefore did not have an opportunity to address whether section 2-24-09(B)(3) was mandatory federal directive.

Section 2-24-09(B)(3) provides that "officers will discontinue pursuits initiated by another jurisdiction when the pursuit continues outside their jurisdiction, unless officer safety becomes a consideration."  Although the parties did not explicitly address whether subsection (B)(3) of section 2-24-09 was mandatory or discretionary, the parties addressed generally whether section 2-24-09 was a mandatory federal directive. In their sur-reply, Plaintiffs argued that if the Court was to find that section 2-24-09 applied to the facts of this case, Neuenfeldt should have discontinued the pursuit for safety considerations pursuant to subsection (B)(3).  (Doc. 126 at 3161). Implicit in Plaintiffs' argument is the argument that section 2-24-09(B)(3) is a mandatory federal directive because if it was discretionary, it would fall within the discretionary function

exemption to the FTCA which is the antithesis of Plaintiffs' argument. The Government argued as well in support of its motion to dismiss that section 2-24-09 was discretionary. (Doc. 97 at 2482) ("Even if the provision discussing pursuits beyond the Tribe's jurisdiction did apply, that section is still discretionary, and Chief Neuenfeldt met its plain terms."). The Government discussed section 2-24-09(A) which provides that "a pursuit may extend beyond the reservation line, but primary control of the pursuit must be relinquished as soon as practical to police personnel of the entered jurisdiction if their policy allows them to enter the pursuit." (Doc. 117 at 3073). The Government argued that this Handbook provision leaves it to the officer's judgment to determine when it is "practical" to relinquish control of the pursuit. The Government also appeared to discuss section 2-24-09(B)(2) which provides that "[a]n officer may participate in a pursuit initiated by another jurisdiction to assist with officer safety concerns but should request that the pursuit be terminated if conditions pose a safety hazard." This provision contained an element of "officer safety" much like section 2-24-09(B)(3). On the motion to dismiss, the Government discussed "officer safety" and the fact that it was not defined in the Law Enforcement Handbook to support its argument that "officer safety" determinations are discretionary decisions and thus fall within the discretionary function exception to the FTCA. (Doc. 117 at 3073). The Government also argued that the language of section 2-24-09(B)(2) concerning termination of the pursuit "if conditions pose a safety hazard" is also not defined and leaves discretion to the officer. (Doc. 117 at 3073-74).

In its Opinion, the Court acknowledged the Government's argument that considerations of "officer safety" render section 2-24-09(B)(3) discretionary. (Doc. 142 at 3378). However, the Court concluded that section 2-24-09(B)(3) of the Handbook mandated that Officer Neuenfeldt discontinue pursuit because officer safety was essentially a non-issue once Trooper Kurtz was evaded by Bourassa during the pursuit.

The Court finds that whether section 2-24-09(B)(3) was a mandatory federal directive was adequately addressed by the parties on the motion to dismiss and the Court will not readdress this issue on the motion for reconsideration.

## IV.   Considerations of Officer Safety

The Government argues that because the parties had not addressed section 2-24-09(B)(3) and the facts relating to "officer safety" on the motion to dismiss, the Court rendered its decision

without considering all of the facts relating to officer safety in the pursuit.  (Doc. 145 at 3400).
The Court finds that the United States addressed considerations of officer safety at length in its
briefing on the motion to dismiss.  (Doc. 117 at 3073-74).  The Court will not readdress this issue
on reconsideration.

It is hereby ORDERED for the foregoing reasons, the Court has reconsidered portions of
its Opinion as stated above, and as to what was reconsidered, the motion to change the ruling of
the Court is denied even though portions of the previous ruling of the Court were reconsidered.

Dated this 27th day of February, 2023.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
MATTHEW THELEN, CLERK

11