UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| MICAH ROEMEN;<br>TOM TEN EYCK,<br>Guardian of Morgan Ten Eyck; and<br>MICHELLE TEN EYCK,<br>Guardian of Morgan Ten Eyck,<br><br>                Plaintiffs,<br><br>    vs.<br><br>UNITED STATES OF AMERICA<br>ROBERT NEUENFELDT, individually<br>And UNKNOWN SUPERVISORY<br>PERSONNEL OF THE UNITED<br>STATES, individually,<br><br>                Defendants. | 4:19-CV-04006-LLP<br><br><br>ORDER DENYING PLAINTIFFS'<br>MOTION TO COMPEL PRODUCTION<br>OF DOCUMENTS<br><br>DOCKET NO. 170 |

**INTRODUCTION**

This matter is before the court on the Second Amended Complaint of plaintiffs Micah Roemen, and Tom and Michelle Ten Eyck, as guardians of Morgan Ten Eyck.  Docket No. 76.  Plaintiffs seek damages for injuries suffered by passengers of a vehicle involved in a police chase and subsequent crash. See generally id.  Plaintiffs' complaint espoused multiple common law and federal statutory theories, some of which the district judge dismissed in motions practice.  Id.; Docket Nos. 31 at pp. 23–24, 142 at p. 36; Ten Eyck v. United States, 463 F. Supp. 3d 969, 990 (D.S.D. 2020).  Surviving are a negligence claim against the United States, pursuant to the Federal Tort

Claims Act, 28 U.S.C. §§ 2671–2680, as well as Bivens[1] actions against Robert Neuenfeldt and other unknown defendants.  Docket Nos. 31 at pp. 23–24, 76 at pp. 6–15, 142 at p. 36; Ten Eyck, 463 F. Supp. 3d at 990.  This court has original jurisdiction over the matter under 28 U.S.C. §§ 1331 and 1346(b).  This opinion resolves plaintiffs' Motion to Compel Production of Documents [Docket No. 170] which the district judge referred to this magistrate judge.[2] Docket No. 177.

## FACTS

At approximately 1:30 a.m. on June 18, 2017, Morgan Ten Eyck and Micah Roemen were passengers in a vehicle driven by Tahlen Bourassa.  Docket No. 155 at p. 4.  Mr. Bourassa's pickup approached the site of an unauthorized house party in rural Moody County, where multiple officers were on scene to investigate, "process" the partygoers, and in one instance, assist a partygoer having a seizure.  Id. at pp. 2–5.  South Dakota Highway Patrol Trooper Isaac Kurtz pulled Mr. Bourassa over because he believed Mr. Bourassa's presence was related to the house party.  Docket No. 112, ¶ 58.  Chief Neuenfeldt then allegedly ordered Mr. Bourassa to exit his vehicle.

---

[1] Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).

[2] Federal Rule of Civil Procedure 37(a)(1) requires a motion to compel to "include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."  District of South Dakota Local Rule 37.1 requires "[a] party filing a motion concerning a discovery dispute [to] file a separate certification describing the good faith efforts of the parties to resolve the dispute."  Plaintiffs have satisfied these requirements.  Docket Nos. 170, 172.

Docket No. 155 at p. 5. Chief Neuenfeldt also "told Bourassa he would arrest him if Bourassa did not unlock his doors." Docket No. 112, ¶ 70.

Instead of complying, Mr. Bourassa fled the scene. Docket No. 155 at p. 5. A 24-minute, multi-vehicle police chase ensued, followed by the single-vehicle collision of Mr. Bourassa's truck at the terminus of a dead-end street. Docket No. 155 at pp. 5–9. The impact of the collision caused Mr. Bourassa, Mr. Roemen, and Ms. Ten Eyck to be ejected from the truck. Id. at p. 8. The government acknowledges that injuries arose to "all occupants," but no party agrees on the extent of the injuries. Docket Nos. 77, ¶¶ 29–34, 76, ¶¶ 29–34, 78, ¶¶ 2, 6.

The point of contention underlying the present motion is the life expectancy of Morgan Ten Eyck. Docket No. 170 at p. 1, Docket No. 172-1 at pp. 2–3. Plaintiffs allege that Ms. Ten Eyck is "completely incapacitated." Docket No. 76, ¶ 33. Accordingly, their prayer for relief contemplates both a lifetime of care and compensation for her permanent loss. Id., ¶ 97. Ms. Ten Eyck's life expectancy is a necessary input for calculating the associated "life care valuation" and "earnings valuation." Cf. Docket No. 163-6 at pp. 1–7. This is so, because as the duration of incapacity increases, so does the cost of care and the loss of potential earnings. Cf. id. To estimate this life expectancy, both the government and the plaintiffs rely on experts. See Docket No. 163 at p. 2; Docket No. 172-1 at pp. 2–3.

Plaintiffs' expert, the economist Donald Frankenfeld, assumed Ms. Ten Eyck's life expectancy to be age 81.1. Docket No. 163-6 at pp. 1, 8. The

3

government's expert, Dr. Robert Shavelle,[3] calculated Ms. Ten Eyck's life expectancy as a number of years: 18, which, when added to his age assumption of 25.6, would amount to a life expectancy of age 43.6.  Docket No. 172-2 at p. 2.  Thus, a gap of 37.5 years exists between Mr. Frankenfeld's economic assumption and Dr. Shavelle's expert opinion.

In response to this gap, plaintiffs enlisted another expert, Dr. Michael Freeman, who will provide a report and testimony in rebuttal of Dr. Shavelle's findings.[4]  Docket No. 168 at p. 5.  To do so, Dr. Freeman seeks the raw data underlying certain articles cited by Dr. Shavelle.  Docket No. 173 at pp. 1–2.  The goal is to re-assess the similarity between Ms. Ten Eyck and the patients from those studies.  Docket No. 171 at pp. 1–2.  This is necessary, plaintiffs argue, because certain factors were ignored by the studies yet acknowledged as "indicative and important" at Dr. Shavelle's deposition.  Id.

At his deposition, plaintiffs asked Dr. Shavelle whether he used the raw data underlying these articles "in [his] analysis that then is cited in [his] report."  Docket No. 193 at p. 25 (Shavelle Dep. 24:8–12).  Dr. Shavelle denied this.  Id. (Shavelle Dep. 24:13).  Instead, Dr. Shavelle testified that he "relied on the four things listed in paragraph 7 of [his] report."  Id. (Shavelle Dep. 24:13–17).  These four things are (1) the materials provided to him concerning the

---

[3] Dr. Robert Shavelle has "a Ph.D. in applied statistics with substantive field epidemiology."  Docket No. 193 at p. 6 (Shavelle Dep. 5:14–19).

[4] Pending before the district judge is the government's Motion to Strike Plaintiffs' Rebuttal Experts Dr. Michael Freeman and Dr. Alan Weintraub on the grounds plaintiffs did not timely disclose these experts.  Docket No. 183.

present litigation, (2) "a large body of medical literature from around the world," (3) "standard scientific methods," and (4) his "education, training, experience, and expertise." Docket No. 172-2 at p. 2, ¶ 7. Dr. Shavelle repeated this assertion throughout his deposition. Id. at p. 64 (Shavelle Dep. 63:13–22) ("I did not rely on any raw data, data set, database, or electronic repository of patient information."); id. at p. 23 (Shavelle Dep. 22:6–8) ("Nor did I rely on any of that data in forming my opinions in this case."). Further, Dr. Shavelle stated that none of the raw data was in his possession. Id. (Shavelle Dep. 22:5–6).

 Plaintiffs questioned whether the underlying "data sets would verify whatever was written in the stud[ies]" that Dr. Shavelle relied on. Id. at p. 36 (Shavelle Dep. 35:18–19); id. at p. 37 (Shavelle Dep. 36:2–4) ("And the data sets would verify it, correct? Don't have to take your word for it. It would be verified by the data sets, correct?"). Dr. Shavelle explained that a typical peer-review process looks "at other studies to see if the results are consistent," or looks "at the study itself to see if it's internally consistent." Id. at p. 39 (Shavelle Dep. 38:18–21). Dr. Shavelle noted that most of the studies "are based on long-standing research databases," for which "[t]here have been a number of reliability studies." Id. (Shavelle Dep. 38:11–16). But Dr. Shavelle stated it was "exceedingly, unusually" rare for peer-reviewers to "request or receive access to the underlying data or analyze it." Id. (Shavelle Dep. 38:8–10).

For the purpose of undertaking their own verification, plaintiffs made an oral request for production of the raw data during Dr. Shavelle's deposition. Id. at p. 23 (Shavelle Dep. 22:20–23). The government replied that because Dr. Shavelle did not possess the data, it could not give the plaintiffs something it did not have. Id. (Shavelle Dep. 23:5–11). Because they were "not going to agree," the parties decided that this verbal exchange would be considered a meet and confer for purposes of the instant motion. Id. at 66–67 (Shavelle Dep. 65:11—66:10).

## DISCUSSION

**A.  An Expert's Fact and Data Disclosure, Generally.**

When a party retains an expert to testify at trial, the Federal Rules of Civil Procedure require the party "to disclose that expert's written report to the adversary." Monsanto Co. v. Cropscience, 214 F.R.D. 545, 546 (E.D. Mo. 2002) (citing FED. R. CIV. P. 26(a)(2)(B)). The purpose of this disclosure is so the adversary "will be ready to rebut, to cross-examine, and to offer a competing expert if necessary." Walsh v. Chez, 583 F.3d 990, 994 (7th Cir. 2009). Rule 26(a)(2)(B) dictates the required content of the report. As pertinent here, one requirement is the inclusion of "the facts or data considered by the [expert] witness in forming [the expert's opinions]." FED. R. CIV. P. 26(a)(2)(B)(ii).

The unaltered text of Rule 26(a)(2)(B)(ii) requires "the facts or data considered by the witness in forming them." The word "witness" refers to a testifying expert witness. See FED. R. CIV. P. 26(a)(2)(B) ("the witness is one retained or specially employed to provide expert testimony in the case"). The

6

word "them" carries its meaning from romanette (i).  See FED. R. CIV. P. 26(a)(2)(B)(i) ("a complete statement of all opinions the witness will express and the basis and reasons for *them.*") (emphasis added).  Putting the terms together, Rule 26(a)(2)(B)(ii) requires disclosure of "the facts or data considered by the [testifying expert] witness in forming [all opinions the [testifying expert] witness will express]."  See Biestek v. Berryhill, 587 U.S. ___, ___, 139 S. Ct. 1148, 1154 (2019) ("[A]n expert witness must produce all data she has considered in reaching her conclusions.")

Some examples of facts or data which must be disclosed are "documents and information disclosed to an expert in connection with their anticipated expert testimony."  Jim Hawk Truck-Trailers of Sioux Falls, Inc. v. Crossroads Trailer Sales & Serv., No. 4:20-CV-04058-KES, 2023 WL 356121, at *7 (D.S.D. Jan 23, 2023) (quotation omitted); see also Kooima v. Zacklift Int'l, 209 F.R.D. 444, 446–47 (D.S.D. 2002) (documents given to a testifying expert by counsel are discoverable).  The report must also disclose any publications an expert reviewed when forming his opinion.  See, e.g., McLaughlin v. BNSF Ry. Co., 439 F. Supp. 3d 1173, 1181 & n.2 (D. Neb. 2020).  The question before this court is whether the raw data sets underlying such publications must also be disclosed.  Docket No. 171 at p. 2.

B.   **Whether Raw Data Must be Disclosed, Generally**

In Kayongo-Male v. South Dakota State University, the defendant's expert, Dr. Neumann, used name, race, and salary data supplied by the defendant university to create a regression analysis for trial.  No. CIV 04-

7

04172, 2008 WL 2627699, at *1, *3–4 (D.S.D. July 3, 2008). While the university provided some of the underlying data to the plaintiff, it omitted the data connecting name to race. Id., at *4. The university omitted that data because Dr. Neumann stated it "did not factor into his analysis." Id. The district court ordered the raw data's production, because "[t]he Eighth Circuit permits liberal discovery of all information disclosed to a testifying expert in connection with his testimony, whether or not the expert relies on the documents and information in preparing his report." Id. (quotation omitted).

In Page v. Hertz Corp., this court considered whether a defendant was entitled to raw data collected for an expert's neuropsychological evaluation of the plaintiff. No. CIV. 09-5098, 2011 WL 5553489, at *7–8 (D.S.D. Nov. 15, 2011). When ordering the disclosure of that data, this court quoted Sapone v. Grand Targhee for the proposition that a defendant is "entitled to cross examine plaintiffs' expert witnesses on all information considered by the experts in arriving at their ultimate opinions." Id., at *8 (quoting No. 00-CV-020-J, 2000 WL 35615926, at *2 (D. Wyo. Aug. 9, 2000)) (alterations deleted).

But not all courts considering whether to compel the production of raw data sets do so. In Annex Books, Inc. v. City of Indianapolis, a plaintiff sought the production of "large quantities of police reports or 911 reports"—raw data used by the defendant's expert to author studies "for other cities in prior cases." No. 1:03-cv-00918-SEB-TAB, 2011 WL 3298425, at *2 (S.D. Ind. Aug. 1, 2011). For the case before the court, the expert, Dr. McCleary, relied on "published, peer reviewed articles" informed by those earlier studies. Id., at *3.

8

Dr. McCleary did not possess the underlying data, and the court held that he was under no obligation to have saved it:

> Dr. McCleary's expert report relies on the information and data contained in the published articles discussing the Sioux City and Montrose studies, and those articles have been provided to Plaintiffs. The underlying, raw data presently sought by Plaintiffs was compiled and used in completely separate cities, studies, and cases. Nothing required the Defendant's expert to retain that raw data, and he did not do so. Since the data was not retained, its production cannot be compelled, and since there was no duty to retain the data, the failure to retain the data cannot be the basis of any preclusion order. Plaintiffs still have the option to depose Defendant's expert witness and he is also subject to cross-examination at trial. Accordingly, Plaintiff's motion to compel is denied.

Id.

Tate v. United States was a District of Alaska discovery dispute, which, coincidentally, also involved Dr. Robert Shavelle, the government's expert in the instant case, and Dr. Michael Freeman, plaintiffs' rebuttal expert in the instant case. No. 3:14-cv-0242 JWS, 2016 WL 5329567 (D. Alaska Sep. 21, 2016); Pl. Tate's Mem. in Supp. of Mot. to Compel Prod. of "Raw Data" upon Which Def.-Expert Robert Shavelle is Relying in Making Life-Expectancy Projections at p. 5, Tate v. United States, No. 3:14-cv-0242 JWS, 2016 WL 8259792 (D. Alaska Aug. 9, 2016) [hereinafter Tate Memo]. On facts similar to the instant case, Dr. Shavelle, on behalf of the government, provided an opinion and written report concerning the life expectancy of the plaintiff, Cynthia Tate. Tate, 2016 WL 5329567, at *1–2. And similar to the instant case, Dr. Freeman stated that "[i]n order to fully and properly critique Dr. Shavelle's methodology, and prepare for trial, [he] must have the raw data upon which Dr. Shavelle [relied]." Tate Memo at p. 5.

9

The raw data was sought through a request for production. Id. at p. 3. It read: "[w]ith respect to Defendant's life expectancy expert(s), please produce a copy of any raw data extracted in which . . . they rely or use to support/reach their opinions on life expectancy on this case." Id. The issue with the request was Dr. Shavelle did not rely on raw data to "support" or "reach" his opinion. Tate, 2016 WL 5329567, at *4. The court wrote:

> Plaintiffs are correct that if Dr. Shavelle considered raw data in forming his opinions, he would have to disclose those data to Plaintiffs. The problem with Plaintiff's motion, however, is that they have not shown that Dr. Shavelle did so. Plaintiffs focus on the fact that Dr. Shavelle presumably relied on raw data when authoring and co-authoring his articles. That is not the same as relying on raw data when forming his opinions in this case. Plaintiffs have not shown that, in forming his opinions to be expressed here, Dr. Shavelle either reviewed any of the raw data upon which his articles rely or considered any such data from memory.

Id.

The line of distinction separating these cases should be clear: if an expert considers raw data when forming his opinion for the present action, that raw data must be disclosed. Kayongo-Male, 2008 WL 2627699, at *4; Page, 2011 WL 5553489, at *8; see also U.S. Surgical Corp. v. Orris, Inc., 983 F. Supp. 963, 970 (D. Kan. 1997) (raw survey data considered for report used at summary judgment stage must be disclosed). When an expert considers published articles in forming his opinion, any data sets that underlie those articles, but were not independently considered, do not need to be possessed, preserved, or disclosed. Annex Books, Inc., 2011 WL 3298425, at *3; cf. Tate, 2016

10

WL 5329567, at *4; see also Garrigan v. Bowen,[5] 243 P.3d 231, 237 (Colo. 2010) ("What must be disclosed is not all data and information the expert has ever considered but rather data and information the expert considered while forming her opinions for the case.") (construing Colorado's analogous Colo. R. Civ. P. 26(a)(2)(B)(I)).

All of this simply falls in line with the clear command of Federal Rule of Civil Procedure 26(a)(2)(B)(ii). The rule explicitly contemplates facts or data considered for opinions that will be expressed in the future—for the case at hand. FED. R. CIV. P. 26(a)(2)(B)(i-ii). A reading of the rule that would require disclosure of long-forgotten facts used for peer-reviewed studies of the past cannot be reconciled with the text.

In summary, to determine whether any raw data underlying an article must be disclosed as part of an expert's written report, a court must determine whether that raw data was considered by the expert for the case at hand, independently of his consideration of the article. The court does so by objectively weighing the facts before it. See United

---

[5] Plaintiffs argue that "the Government's use of Garrigan v. Bowen is unpersuasive to the issue before this Court because the Government's position is at odds with the well-established law from the District of South Dakota, namely Kooima." Docket No. 194 at p. 5. But Kooima v. Zacklift International, Inc. concerned documents that flowed back and forth between counsel and an expert, the plaintiff himself. 209 F.R.D. at 446–47. Nothing about Garrigan denies required disclosure of such documents, and this district's opinion in Kayongo-Male, referenced *supra*, explicitly acknowledges that requirement in the data context. See generally 243 P.3d 231; see also 2008 WL 2627699, at *4. Plaintiffs' citation to Kooima to support the statement that "the District of South Dakota has already stated that underlying raw data is discoverable whether or not Dr. Shavelle relied on it" is an unsupported extension of the opinion. Compare Docket No. 194 at p. 5 with 209 F.R.D. at 447.

States v. Dish Network, L.L.C., 297 F.R.D. 589, 595–96 (C.D. Ill. 2013) (a declaration made by a witness that he did not consider raw data is not dispositive).

**C.      Whether the Raw Data in the Instant Action Must be Disclosed Under Federal Rule of Civil Procedure 26(a)(2)(B)(ii).**

On October 2, 2023, the government filed with this court a declaration of Dr. Shavelle, where he stated, under the penalty of perjury, "I did not compile, review, consider, or rely upon any raw data, dataset, or database in forming my opinions or computing Morgan's life expectancy.  Rather, I relied on the information and analysis contained in the peer-reviewed medical studies and other records that I cited in my report." Docket No. 187, ¶ 11.  Dr. Shavelle testified similarly at his deposition—stating repeatedly that he did not rely on raw data when forming his opinion.  See, e.g., Docket No. 193 at p. 23 (Shavelle Dep. 22:6–8).

These assertions, while weighty, are not dispositive.  Tate, 2016 WL 5329567, at *4.  But the court also notes that Dr. Shavelle testified that he does not possess any of the raw data plaintiffs seek.  To wit: Dr. Shavelle noted that "obviously, for the studies where I was not a co-author, I did not have access to the data ever," and "for the studies where I was a co-author, I may have had access at the time . . . but . . . as I said I do not have that data today." Docket No. 193 at p. 28 (Shavelle Dep. 27:15–21).  The most recent article co-written by Dr. Shavelle is from 2015.  Docket No. 193-1 at pp. 5–7.  Dr. Shavelle

12

noted that the data never belonged to him, but rather belongs to the entities for which he was performing work—for example, the State of California Department of Developmental Services, "or the National Traumatic Brain Injury Model Systems in other instances." Id. at p. 22 (Shavelle Dep. 21:24–25), id. at p. 28 (Shavelle Dep. 28:8–9). To state the obvious: if Dr. Shavelle was not in possession of the raw data, he could not have considered it for the purposes of calculating Ms. Ten Eyck's life expectancy.

To the extent plaintiffs dispute Dr. Shavelle's lack of possession of these underlying data sets, it is plaintiffs' burden to demonstrate otherwise. See Hagemeyer N. Am., Inc. v. Gateway Data Scis. Corp., 222 F.R.D. 594, 598 (E.D. Wis. 2004). Plaintiffs' speculative assertion that "he has [the data]" is not sufficient to meet that burden. Docket No. 193 at p. 67 (Shavelle Dep. 66:8).

Because Dr. Shavelle was not in possession of the data, and because Dr. Shavelle has repeatedly asserted, under penalty of perjury, that he did not consider raw data when forming his opinions, this court finds that Dr. Shavelle did not consider the underlying raw data when forming his opinion, and therefore need not produce said data pursuant to Federal Rule of Civil Procedure 26(a)(2)(B)(ii).

D.   **Whether the Raw Data Must be Disclosed under Federal Rule of Civil Procedure 34.**

Assuming without deciding both the validity of plaintiffs' oral request for production, submitted during Dr. Shavelle's deposition, and

13

the underlying data's relevancy, the court still determines that the request for production cannot accomplish what it seeks.

Under Federal Rule of Civil Procedure 34(a)(1), a party need only provide those things that are in the "party's possession, custody, or control." "Documents are deemed to be within the possession, custody, or control if the party has actual possession, custody or control, or has the legal right to obtain the documents on demand." In re Hallmark Capital Corp., 534 F. Supp. 2d 981, 982 (D. Minn. 2008) (quotation omitted) (alteration deleted). In addition to a legal right, courts also find control "when that party has the . . . practical ability, to obtain the [discovery] from a non-party to the action." Prokosch v. Catalina Lighting, Inc., 193 F.R.D. 633, 636 (D. Minn. 2000) (quotation omitted). "The concept of control is highly fact specific." Raba v. Dye, No. 4:21-CV-04192-KES, 2023 WL 2598891, at *6 (D.S.D. Mar. 22, 2023) (citation omitted).

A request for production is served on a party. Howard Johnson Int'l, Inc. v. Inn Dev., Inc., No. CIV. 07-1024-KES, 2008 WL 1849863, at *2 (D.S.D. Apr. 18, 2008). A retained expert is not a party. Some courts believe that because of the relationship between a party and its retained expert, the party may have the practical ability to obtain documents or information from its expert. See, e.g., Alper v. United States, 190 F.R.D. 281, 283 (D. Mass. 2000). But implicit in this assumption is the expert's possession of the information sought. Cf. Washam v. Evans, No.

2:10CV00150 JLH, 2011 WL 2559850 (E.D. Ark June 29, 2011) ("A party may be ordered to produce a document in the possession of a non-party entity if that party has a legal right to obtain the document or has control over the entity who is in possession of the document.") (quotation omitted).

In the instant case, defendant does not possess or have custody of the sought data sets. So, the only question is whether it has control of the data sets—the inference being that defendant can obtain the sets from Dr. Shavelle. But Dr. Shavelle's testimony established that he is not in possession of the data sets. Docket No. 193 at p. 28 (Shavelle Dep. 27:15–21). While defendant may be able to exercise a certain degree of control over Dr. Shavelle, no practical ability exists to obtain the data sets from Dr. Shavelle, because Dr. Shavelle does not possess them. Washam, 2011 WL 2559850, at *2.

Nothing about Rule 34 requires a non-party to procure information from another non-party in order to satisfy a request for production. Here, the owners of the data are entities such as the California Department of Developmental Services. Docket No. 193 at p. 22 (Shavelle Dep. 21:24–25). The proper vehicle through which to seek the data is a subpoena of the owner entities. Fisher v. Marubeni Cotton Corp., 526 F.2d 1338, 1341 (8th Cir. 1975). Plaintiffs appear to understand this. See Docket No. 193 at p. 35 (Shavelle Dep. 34:4–6) ("And you say the State of California. Do they exist with Brooks who co-

authored -- I want to know who to send the subpoena to."). Neither Rule 34 nor Rule 26 require defendant to produce the raw data sets plaintiffs seek to compel.

## CONCLUSION

Based on the foregoing facts, law, and analysis, it is:

ORDERED that plaintiff's Motion to Compel Production of Documents [Docket No. 170] is denied in accordance with this opinion. Dr. Shavelle testified he relied upon published peer-reviewed articles in forming his opinions, which articles have been provided to plaintiffs in discovery. Neither the government nor Dr. Shavelle are required to disgorge the underlying raw data, which was reviewed in authoring the articles, especially because Dr. Shavelle is not the owner of that raw data, does not possess it, and has not possessed it for several years.

<THIS SPACE INTENTIONALLY LEFT BLANK>

**NOTICE OF RIGHT TO APPEAL**

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law.  The parties have fourteen (14) days after service of this order to file written objections pursuant to 28 U.S.C. § 636(b)(1)(A), unless an extension of time for good cause is obtained.  See FED. R. CIV. P. 72(a); 28 U.S.C. § 636(b)(1)(A).   Failure to file timely objections will result in the waiver of the right to appeal questions of fact.  Id.  Objections must be timely and specific in order to require review by the district court.  Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED this 16th day of October 2023.

BY THE COURT:

_____
VERONICA L. DUFFY
United States Magistrate Judge