UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| MICAH ROEMEN, and TOM TEN EYCK, Guardian of Morgan Ten Eyck; and MICHELLE TEN EYCK, Guardian of Morgan Ten Eyck,<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED STATES OF AMERICA, ROBERT NEUENFELDT, individually and UNKNOWN SUPERVISORY PERSONNEL OF THE UNITED STATES, individually,<br><br>Defendants. | 4:19-CV-4006-LLP<br><br>MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION IN LIMINE 3 |

Pending before the Court is Plaintiffs' Motion in Limine 3 to exclude under the collateral source rule any evidence that Plaintiffs had health insurance at the time of the accident or received benefits from such health insurance. (Doc. 207). The Government has filed a response to Plaintiffs' Motion (Doc. 218) and Plaintiffs have filed their reply (Doc. 221). In their response, the Government provides that Morgan Ten Eyck receives TRICARE coverage through her father, Tom Ten Eyck, who has been an enlisted member of the military since 1988. (Doc. 218 at 4721). Morgan is enrolled in TRICARE as an "adult dependent" under Mr. Ten Eyck's TRICARE. The Government argues that TRICARE is not a collateral source and the United States is entitled to an offset against any FTCA damage award for past TRICARE payments to third-party medical providers, as well as for the cost of future care that likely will be paid by the government through TRICARE. (Doc. 218 at 4716).

**BACKGROUND**

1

Pursuant to authority delegated to it by Congress, the Department of Defense established the Civilian Health and Medical Program of the Uniformed Services, called CHAMPUS, in 1967. *Baptist Physician Hosp. Org., Inc. v. Humana Military Healthcare Servs., Inc.*, 368 F.3d 894, 895 (6th Cir. 2004). CHAMPUS beneficiaries include retired armed forces personnel and dependents of both active and retired military personnel. *Id.* CHAMPUS is funded from the U.S. Treasury by moneys appropriated by Congress in the annual Defense Appropriations Act. *Kornegay v. United States*, 929 F.Supp. 219, 221 (E.D. Va. 1996) (citing 32 C.F.R. 191(d), (e)).

In 1995, the Department of Defense established TRICARE, a managed health care program operating as a supplement to CHAMPUS and involving the competitive selection of private contractors to financially underwrite the delivery of health care services under CHAMPUS. *Baptist Physician Hosp. Org*, 368 F.3d at 895. There are various types of TRICARE benefit programs. *See* 32 C.F.R. § 199.17(a)(6)(ii) (listing "TRICARE Prime," "TRICARE Select," "TRICARE for Life," and "TRICARE Standard"). The Government states that as an enlisted member of the military, Mr. Ten Eyck is enrolled in "TRICARE Reserve Select" and that his daughter Morgan Ten Eyck is enrolled in TRICARE through her father as an "adult dependent." (Doc. 218 at 4721-22). The Government contends that Morgan's TRICARE benefits would, like CHAMPUS, be funded from the general treasury of the United States.

TRICARE Reserve Select is a premium-based health plan that is available for purchase by members of the Selected Reserve and certain survivors of Selected Reserve members. 32 C.F.R. § 199.24(a)(1). TRICARE Reserve Select offers the TRICARE Select self-managed, preferred-provider network option under § 199.17 to qualified members of the Selected Reserve, their immediate family members, and qualified survivors. 32 C.F.R. § 199.24(a). TRICARE Select allows beneficiaries to use the TRICARE provider civilian network, with reduced out-of-pocket costs compared to care from non-network providers, as well as military treatment facilities (where they exist and when space is available). 32 C.F.R. 199.17(a)(6)(ii)(B). TRICARE Select enrollees do not have restrictions on their freedom of choice with respect to authorized health care providers. *Id.* However, when a TRICARE Select beneficiary receives services covered under the basic program from an authorized health care provider who is not part of the TRICARE provider network that care is covered by TRICARE but is subject to higher cost sharing amounts for "out-of-network" care. *Id.* TRICARE Reserve Select features the deductible, catastrophic cap and cost

share provisions of the TRICARE Select plan applicable to Group B active duty family members under § 199.17(1)(2)(ii) for both the member and the member's covered family members; however, the TRICARE Reserve Select premium applies instead of any TRICARE Select plan enrollment fee under § 199.17. 32 C.F.R. § 199.24(a)(4)(iv).

A retiree or retiree family member who becomes eligible for Medicare Part A is not eligible to enroll in TRICARE Select. 32 C.F.R. § 199.17(c). In general, when a retiree or retiree family member becomes individually eligible for Medicare Part A and enrolls in Medicare Part B, he/she is automatically eligible for TRICARE-for-Life and is required to enroll in the Defense Enrollment Eligibility Reporting System to verify eligibility. *Id.* TRICARE-for-Life is the Medicare wraparound coverage plan under 10 U.S.C. § 1086(d). 32 C.F.R. 199.17(a)(6)(ii)(C). A retiree must purchase Medicare Part B to be eligible for the Tricare-for-Life medical benefit. 10 U.S.C. § 1086(d)(1), (2); *Brown v. United States*, Civ. No. 3:17-551, 2020 WL 6811121, at *10 (S.D. Miss. May 13, 2020). A retiree pays a monthly fee—deducted from his or her monthly Social Security payment—for Medicare Part B. *See Schism v. United States*, 316 F.3d 1259, 1265 (Fed. Cir. 2022). Tricare-for-Life covers out-of-pocket costs for care greater than that covered by Medicare and amounts paid or payable by third party payers other than Medicare. 10 U.S.C. § 1086(d)(3)(A).

## DISCUSSION

The Government argues that in the event the Court finds that Plaintiffs are entitled to an FTCA damages award against the United States, Plaintiffs' past and future medical expenses should be offset by the amount of medical expenses paid by the United States through TRICARE. (Doc. 218). The Government argues that TRICARE payments are an exception to the collateral source rule. Under South Dakota law, "total or partial compensation received by an injured party from a collateral source, wholly independent of the wrongdoer, does not operate to reduce the damages recoverable from the wrongdoer." *Papke v. Harbert*, 738 N.W.2d 510, 531 (S.D. 2007). The Government argues that TRICARE benefits are funded from the general treasury of the United States to which the recipients of TRICARE benefits do not contribute. (Doc. 218 at 4719-20). The Government argues that because the source of TRICARE funds are not "wholly independent of the wrongdoer," the United States in this case, the offsetting of past and future medical payments is necessary in order to ensure that the United States is not paying twice for the same injury. (Doc. 218 at 4717).

3

The Government cites to several cases that have held that TRICARE benefits are not collateral sources. When analyzing whether TRICARE benefits are a collateral sources, the cases to which the Government cites have looked at the origin of the funds. For example, in *Mays v. United States*, 806 F.2d 976 (10th Cir. 1986), which was cited by the Government in its brief, the Tenth Circuit Court of Appeals held that CHAMPUS payments were not a collateral source under Colorado law. *Id.* at 977. The Court stated that Colorado law provides that "compensation and indemnity received by an injured party from a collateral source, wholly independent of the wrongdoer and to which he has not contributed, will not diminish the damages otherwise recoverable from the wrongdoer." *Id.* It noted that in *Berg v. United States*, 806 F.2d 978 (10th Cir. 1986), it had held that under Colorado's collateral source rule, "government payments are collateral if the payments come from 'a special fund that is separate and distinct from general government revenues' and to which the plaintiff has contributed." *Id.* (citing *Berg*, 806 F.2d at 985). The Court found that because all the money for the CHAMPUS program comes from the general treasury of the United States, and no money is paid directly into the fund by recipients of CHAMPUS benefits, such payments are not from a source collateral to the United States. *Id.* To award damages for a loss for which the United States has already compensated the plaintiffs, the *Mays* court said, would be to allow a double recovery. *Id.* at 978. As in *Mays*, many of the other cases cited by the Government have also held that benefits paid from special funds that are separate and distinct from general government revenues that have been supplied in part by the beneficiary or a relative upon whom the beneficiary is dependent are collateral sources whereas benefits that come from unfunded general revenues of the United States are not. *See Siverson v. United States*, 710 F.2d 557, 560 (9th Cir. 1983); *Kornegay v. United States*, 929 F.Supp. 219, 222 (E.D. Va. 1996) (citing *Mays*); *Lozada v. United States*, 140 F.R.D. 404, 413 (D. Neb. 1991) (citing *Mays*); *Kennedy v. United States*, 750 F.Supp. 206, 213 (W.D. La. 1990) (citing *Mays v. United States*, 806 F.2d 976 (10th Cir. 1986)); *Burke v. United States*, 605 F.Supp. 981, 993-94 (D. Md. 1985).

In *Overton v. United States*, 619 F.2d 1299 (8th Cir. 1980), the Eighth Circuit Court of Appeals took note of the two different approaches among the Circuits in classifying government benefits for collateral source purposes. *Amlotte v. United States*, 292 F.Supp.2d 922, 929 (E.D. Mich. 2003) (citing *Overton*, 619 F.2d at 1308-09)). One approach, as adopted by the *Mays* court and other courts cited to by the Government, distinguished between benefits conferred from "unfunded general revenues" and those stemming from "a special fund supplied in part by the

4

beneficiary or a relative upon whom the beneficiary is dependent." *See id.* (citing *Overton*, 619 F.2d at 1308). The other approach made "a distinction between those proceeds that are in the nature of insurance to the plaintiff and those proceeds that are not." *Id.* (citing *Overton*, 619 F.2d at 1308). The *Overton* Court favored the latter:

> In our view the first distinction is unsound, although some courts have purported to rely on it, because it makes recovery depend on bookkeeping conventions and because it ignores the substantial governmental involvement in the creation and administration of social security programs. It is an artificial distinction that invokes no notion of "substantial justice" to support a possible double recovery by plaintiff. It is the second distinction that best explains *Smith* [*v. United States*, 587 F.2d 1013 (3d Cir. 1978)] and [United States v.] *Hayashi*, [282 F.2d 599, 603 (9th Cir. 1960)]. Absent some statute to the contrary, plaintiffs receiving governmental benefits should receive their FTCA awards free of any set-off for those benefits if there is a showing or a presumption that they or one on whom they were dependent paid a special levy or fee to make the benefits possible. Absent a special payment by plaintiff, the government should not be forced to compensate plaintiff twice, once with money funneled through a special compensation scheme, and again with expenditures from general revenues.

*Id.* at 930 (quoting *Overton*, 619 F.2d at 1308). The Court stated that "[a] plaintiff may invoke the collateral source rule. . . either when the payment in question came from a source wholly independent of the liable party or when the plaintiff may be said to have contracted for the prospect of a 'double recovery.' " *Id.* at 1307. The court found neither rationale to be present with regard to payments received by the plaintiff from Medicare's Part A trust fund. *Id.* at 1307. The Court found that the Medicare Part A trust fund payment was not wholly independent from the liable party's payment because such payment originated from the general treasury. *Id.* at 1305, 1307. The Court additionally found that the plaintiff had not contracted for a double recovery because neither plaintiff nor her husband paid any of the taxes that determined the level or appropriations for the Part A trust fund since both were over age 65 when Medicare was passed. *Id.*[1] By contrast, the Eighth Circuit found that benefits received by the FTCA plaintiff under the Civil Service Retirement Act and National Service Life Insurance were collateral benefits. 619 F.3d at 1309. In support, the court noted that in *United States v. Price*, 288 F.2d 448, 450-51 (4th Cir. 1961), the

---

[1] *But see Manko v. United States,* 636 F.Supp. 1419 (W.D. Mo. 1986), *aff'd*, 830 F.2d 831 (1987) (concluding that Medicare Part A and Part B benefits were a collateral source because plaintiff made contributions to the Health Insurance Trust Fund that funds Medicare Part A and paid premiums (withheld from his social security retirement benefits)); *Amotte v. United States,* 292 F.Supp.2d 922, 932 (E.D. Mich. 2003) (concluding that future payments under Medicare Part A and Part B operate more like an insurance policy; in order to receive Medicare Part A, the insured must have worked and paid into the system through payroll deductions).

court held that retirement benefits of civil service employees are collateral because they are "derived in large measure from the contributions of the employees." *Id.* at 1309, n.14. The *Overton* court noted also that in *United States v. Brooks*, 176 F.2d 482, 485 (4th Cir. 1949), the proceeds paid by the United States as insurer were collateral because "this insurance [was] bought and paid for by deceased; and the government was no more entitled to deduct the amount which it paid as insurer from its liability for wrongful death than if the insurance had been paid by the private insurer." *Id.*

The burden of proof is on the Government, not the plaintiff, of demonstrating the applicability of a set-off. *See, e.g., Overton v. United States*, 619 F.2d 1299, 1309 n.16 (8th Cir. 1980); *Brown v. United States*, Civ. No. 3:17-551, 2020 WL 6811121, at *11 (S.D. Miss. May 13, 2020); *Siverson v. United States*, 710 F.2d 557, 560 (9th Cir. 1983); *Lawson v. United States*, Civ. No. 03-884, 2007 WL 9782519, at *3 (D. Md. Mar. 30, 2007). At this point, the Government has not established that the Ten Eyck's have not contracted for the prospect of a double recovery. There has been no evidence presented in regarding the nature of TRICARE or its different types and the distinctions between benefits or coverages. There has been no evidence as to TRICARE's current sources of funding. As far as the Court can tell from the Federal Regulations, in many ways, the Tricare Reserve Select program, of which Morgan is a beneficiary, resembles private health insurance. Section 199.24(a)(1) of Title 32 to the Code of Federal Regulations provides that "TRICARE Reserve Select is a premium-based health plan that is available for purchase by members of the Selected Reserve and certain survivors of Selected Reserve members." 32 C.F.R. 199.24(a)(1). Morgan's mom, Michelle Ten Eyck, testified that their family pays "200 something a month" in premiums. (Doc. 222-1, Ten Eyck Dep. 90:19-91:2). Under the regulations, beneficiaries must cost-share by paying deductibles and a percentage of remaining charges after the deductible. 32 C.F.R. 199.24(a)(1)(iv). Additionally, like private health insurance, TRICARE gives beneficiaries flexibility to choose between network and non-network providers. 199.17(a)(6)(ii)(B). In other cases, where the insurer is also the tortfeasor, courts have held that the injured plaintiff is entitled to receive all of his insurance benefits in addition to the full damages award. As one district court explained,

> [I]t is possible for a defendant to simultaneously wear two hats. The necessity for multiple payments arises not because the defendant is being doubly-penalized, but because the defendant-tortfeasor and defendant-insurer owe the plaintiff multiple

legal obligations. The first payment of medical bills by the defendant was in its capacity as plaintiff's insurer, pursuant to the insurance agreement entered into between the plaintiff and defendant, for which the plaintiff personally contributed valuable consideration by way of a deduction taken out of each of her paychecks. . . . The defendant is now being asked to pay these same medical expenses as compensatory damages. Even though the same defendant is being asked to pay the same damages twice, it is patent that the nature of the two payments is different. The nature of the first is as a payment from defendant as insurer to the plaintiff as the insured. The nature of the second is as a payment from defendant as tortfeasor to the plaintiff as the party injured by the defendant's negligence. It is axiomatic that the plaintiff is entitled to receive the benefit of her bargain under the insurance contract, irrespective of the fact that the carrier servicing that contract may also be a tortfeasor.

*Karsten v. Kaiser Found. Health Plan of Mid-Atl. State, Inc.*, 808 F.Supp. 1253, 1257-58 (E.D. Va. 1992), *aff'd*, 36 F.3d 8 (4th Cir. 1994) (cited with approval by *Molzof v. United States*, 6 F.3d 461, 465-66 (7th Cir. 1993)). The Eighth Circuit Court of Appeals in *Overton* is in accord with this view, explaining that "if plaintiff happens to be wronged by the same insurance company that has insured against plaintiff's loss...the plaintiff is entitled to a 'double recovery' even though the liable party (the insurance company) and the collateral source (the policy issued by the company) cannot be said to be wholly separate." 619 F.2d at 1307.

It is to be noted that in the event the Court finds liability, it is reluctant in this case to offset any future medical costs by the amount of medical expenses potentially paid through TRICARE in the future. First, the court finds that it is speculative whether TRICARE benefits will continue to be available for Morgan's lifetime. Such benefits may not have vested where the military member must continue to serve until retirement. *See Warren v. United States*, Civ. No. 19-232, 2023 WL 2974253, at *29 (D. Haw. Apr. 17, 2023); *Alexander v. United States*, Civ. No. 3:14-1774, 2016 WL 1733521, at *3 (W.D. Wash. May 2, 2016) (noting that TRICARE benefits will not vest unless the military member remains in military service until his retirement unlike in *Mays* which addressed whether to allow offset of a tort award by medical costs of a retired military veteran's dependent); *Lawson v. United States*, 454 F.Supp.2d 373, 415 (D. Md. 2006) ("Despite Major Lawson's expressed intention, it would be imprudent and speculative for the Court to presume that he will remain with the Air Force to complete his twenty years of service [to guarantee eligibility for Tricare/CHAMPUS benefits]"). Second, some cases reason that future TRICARE benefits are speculative because the program is subject to change in the future. *Warren* 2023 WL 2974253 at *29; *Alexander*, 2016 WL 1733521, at *2 (rejecting *Mays* for future damages,

reasoning in part that "if Congress changed TRICARE by drastically increasing the proportion of costs paid for by beneficiaries, rather than the government, as long as the government funding came from unfunded general revenue, TRICARE would not be a collateral source"); *Galbreath v. United States*, Civ. No. 20-373, 2022 WL 18717579, at *2 (D. Haw. Feb. 17, 2022) ("[N]either the parties nor the Court can say with any reasonable certainty that the TRICARE program will continue for the balance of LG's life or that the benefits will never chance."); *Brown v. United States*, Civ. No. 3:17-551, 2020 WL 6811121, at *11 (S.D. Miss. May 13, 2020( "[TRICARE] is subject to being modified or even eliminated by Congress at any time."). Additionally, in rejecting the argument that any future TRICARE benefits to a plaintiff should offset future damages, the Court shares the discomfort expressed by the Seventh Circuit Court of Appeals in *Molzof v. United States*, 6 F.3d 461 (7th Cir. 1993). There, the court determined that "we share the reluctance of other courts addressing this issue to deny the plaintiff the freedom to choose his medical provider and, in effect, to compel him to undergo treatment from his tortfeasor." *Id.* at 468.

Accordingly, it is HEREBY ORDERED that Plaintiffs' Motion in Limine 3 is GRANTED IN PART and DENIED as follows:

a. The Government will be precluded from offering evidence of future TRICARE benefits and in the event the Court finds liability; the Court will not off-set any potential future benefits from the damage award; and

b. The Government may introduce evidence of past TRICARE benefits in order to establish a record, but will not deduct past TRICARE benefits from any damages award unless the Government meets its burden of proof that such a set-off is appropriate.

Dated this 8th day of November, 2023.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
MATTHEW W. THIELEN, CLERK