UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| MICAH ROEMEN, and TOM TEN EYCK, Guardian of Morgan Ten Eyck; and MICHELLE TEN EYCK, Guardian of Morgan Ten Eyck,<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED STATES OF AMERICA, ROBERT NEUENFELDT, individually and UNKNOWN SUPERVISORY PERSONNEL OF THE UNITED STATES, individually,<br><br>Defendants. | 4:19-CV-4006-LLP<br><br>**MEMORANDUM OPINION AND ORDER GRANTING MOTION TO AMEND** |

Pending before the Court is Plaintiffs' Third Motion to Amend Complaint. (Doc. 264). For the following reasons, Plaintiffs' Motion is granted.

## BACKGROUND

### A. Administrative Complaint

The incident in this case occurred on June 17-18, 2017. Micah Roemen filed an administrative claim under the Federal Tort Claims Act ("FTCA") on May 7, 2018. (Doc. 66-2). In the administrative claim, he asserted personal injury damages in the amount of $1,000,000. (Doc. 66-2). The administrative claim was denied on December 3, 2018. (Doc. 267 at 23810) (citing Doc. 76, ¶ 10).

### B. Federal Complaint and Prior Amendments

On January 14, 2019, Roemen filed his first complaint in federal court alleging the following claims: 1) negligence, 2) a *Bivens* claim, 3) assault and battery, and 4) a *Bivens* claim for negligent supervision, and seeking compensatory damages in the amount of $150,000,000 and punitive damages. (Doc. 1). On April 1, 2019, Roemen filed an unopposed motion to amend/correct complaint and his First Amended Complaint requested $1,000,000 in compensatory damages which mirrored the sum certain request in his administrative complaint. (Docs. 16, 17,

1

21). On August 10, 2020, the Court consolidated the Roemen and Ten Eyck cases and set an October 2, 2020, deadline to add parties and amend the pleadings. (Doc. 35).

On March 31, 2021, after the motion to amend pleadings had passed, Plaintiffs moved to file a Second Amended Complaint with Roemen and Ten Eyck as Plaintiffs in the consolidated case and alleging a new claim (Count V) for negligent training, supervision and retention against the United States. (Doc. 56). The United States opposed the motion to amend. (Doc. 65). The United States argued that good cause to amend did not exist under Rule 16(b) of the Federal Rules of Civil procedure because Plaintiffs did not diligently pursue these claims and because the United States would be prejudiced by this tardy amendment. The United States also argued that the amendment was futile because: 1) Plaintiffs alleged only violations of federal directives rather than state law; 2) Plaintiffs should not be permitted to revive, retool and develop their abandoned supervisory *Bivens* claims; and 3) the negligent hiring, retention and training claims are shielded by the discretionary function exception to the FTCA. (Doc. 65). The Court granted Plaintiffs' Motion to Amend. (Doc. 74).

### C. Third Motion to Amend Complaint

The court trial in this matter was completed on November 22, 2023. (Doc. 243). On April 4, 2024, Plaintiffs filed their Third Motion to Amend Complaint and this Motion is presently pending before the Court. (Doc. 264). The Motion has been fully briefed and is ready for disposition.

### DISCUSSION

Here, Roemen seeks to amend his complaint to increase his general damages amount from $1,000,0000 to $2,500,000 to account for lost future earning capacity because, he testified, he is no longer able to work as an aviation mechanic as a result of his injuries from the incident. Roemen bases his motion to amend his ad damnum clause largely on his trial testimony and that of Dr. Amy Reed, Roemen's treating physician, and Dr. Reed's opinion letter that was received as an exhibit during the trial. Dr. Amy Reed diagnosed Roemen with Type V popliteal artery entrapment syndrome in December 2019. (Doc. 252-3 at 20350). On December 31, 2019, Dr. Reed performed Roemen's first of three surgeries to try and correct this condition. (Doc. 252-3 at 20371). On November 16, 2020, Roemen designated Dr. Reed as a treating physician expert who would

2

"testify as to causation, the reasonableness of the treatment of those injuries, and the medical expenses" in this case. (Doc. 66-7).

Dr. Reed was deposed on October 31, 2023, shortly before the court trial in this matter began on November 13, 2023. (Doc. 241). On November 14, 2023, (Day 2 of the trial), Plaintiffs sought to have Dr. Reed testify by deposition. (Doc. 257-1, Trial Transcript at 399:16-25). The Government objected stating "[t]he only content within th[e] audio deposition is Dr. Reed indicating her opinion that a leg condition that Micah Roemen has was caused previously by the motor vehicle accident" and that the Government had already entered into a stipulation with plaintiffs' counsel that this incident caused Roemen's injuries. (Doc. 257-1, Trial Transcript at 400:1-8). Plaintiffs' counsel stated that the reason Dr. Reed's testimony is important is because she "explains Micah's limitations, his permanent injuries, and how it's going to affect him for the rest of his life." (Doc. 257-1, Trial Transcript at 400:9-12). The Government did not make any further objections to the introduction of this testimony. Due to the poor quality of the audio recording of Dr. Reed's deposition, the Court admitted the deposition transcript, read it independently, and it became part of the record. (Doc. 257-1, Trial Transcript at 400:14-402:7).

Dr. Reed testified that after Roemen's third corrective surgery in December 2021, his artery was no longer entrapped and had returned to normal, yet Roemen was experiencing swelling, heaviness and aching in his right leg when standing for prolonged periods. (Doc. 241, Dr. Reed Dep. at 35:12-21, 36:10-22). After extensive testing, Dr. Reed could not identify another vascular issue causing these symptoms and opines that these symptoms are caused by Lymphedema that developed after the incident and surgeries. (Doc. 241, Dr. Reed Dep. at 35:12-39:17). In Dr. Reed's October 23, 2023, opinion letter that was received into evidence at the Court trial, she opined that no future surgeries are recommended, that Roemen has chronic Lymphedema and that future treatment will consist of physical modifications such as reducing the amount of standing and time on feet. (Trial Exhibit 118 at ¶¶ 4, 6-7). When asked if Roemen's symptoms could affect his ability to work, Dr. Reed testified that even after the artery was released, Roemen continues to have issues with leg heaviness, aching and swelling; that Roemen had previously expressed his frustrations that these symptoms prevented him from doing his job effectively; and that "all of those things make it hard for somebody to do a physical job that he was trying to do." (Doc. 241, Reed Dep. 25:7-56:3). Roemen testified that he is no longer able to work as an aviation mechanic

3

due to the extensive time it requires him to stand on his feet. (Trial Transcript 257-1 566:1-15, 570:5-572:12).

The United States opposes Roemen's Motion to Amend on several bases. (Doc. 267). First, the Government argues that Roemen is precluded under the Federal Tort Claims Act from recovering damages in excess of the $1,000,000 claimed in his administrative complaint because his injury was reasonably discoverable at the time he presented the claim to the federal agency and his injury does not constitute newly discovered facts under section 2675(b) of the FTCA. (Doc. 267 at 23816). Second, the Government argues that under Rule 16(b)(4) of the Federal Rules of Civil Procedure, "good cause" does not exist to amend the complaint after the scheduling order deadline. (Doc. 267 at 23823). Finally, the Government argues that Plaintiffs failed to prove Roemen's lost future earning capacity by precise evidence and give the Government notice of such damages that it argues it is entitled to under South Dakota law. (Doc. 267 at 23820).

Ordinarily, a prevailing "injured party is entitled to an award which will reasonably compensate that party for all damages suffered as a result of the injury. . . ." *Shippen v. Parrott*, 553 N.W.2d 503, 507 (S.D. 1996). Lost earning capacity, in contrast to past lost wages, is an element of compensatory damages under South Dakota law that need not be specifically pleaded. *Weidner v. Lineback*, 140 N.W.2d 597, 602 (S.D. 1966); *Byre v. Wieczorek*, 217 N.W.2d 151, 192 (S.D. 1974) (citation omitted) (stating that loss of earning capacity is one of the natural and necessary consequences of a disability injury, is an element of general damages that need not be specifically pleaded, and "differs from loss of earnings which involves a past loss that must be specially pleaded, and is capable of fairly definite and certain proof."). Allegations of general damages may be set out in the form of a demand for a single sum. Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1256 (4th ed.). In his Amended Complaint, Roemen sought compensatory damages in the amount of $1,000,000 which was the amount of damages he requested in his Administrative Complaint. Now, Roemen seeks compensatory damages in excess of that requested in his administrative complaint in the amount of $2,500,000.

Generally, at least in non-FTCA cases, Rule 54(c) of the Federal Rules of Civil Procedure permits a court to return a verdict greater the amount claimed in the ad damnum clause if justified by the evidence. *See Dotson v. Ford Motor Co.*, 218 F.Supp.2d 815, 816-17 (W.D. Va. 2002) (citing *Smith v. Brady*, 390 F.2d 176, 177 (4th Cir. 1968)) ("The propriety of the verdict is tested

4

by the evidence, not the *ad damnum* clause."); *Gilbane Bldg. Co. v. Fed. Reserve Bank of Richmond*, 80 F.3d 895, 901 (4th Cir. 1996) ("[T]he relief to which a claimant is entitled is not limited to the relief it requested in its original demand for judgment."); *Troutman v. Modlin*, 353 F.2d 382, 385 (8th Cir. 1965) (quoting Fed. R. Civ. P. 54(c)) (stating that under Rule 54(c), "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in its pleadings."); *Mahar v. U.S. Express Enterprises, Inc.*, 688 F.Supp.2d 95, 106-07 (N.D.N.Y. 2010) (finding that defendant "was already on notice that [the plaintiff] may have suffered serious injuries from the accident, and because of the developing nature of those injuries, the court grants the Mahars' motion to amend their complaint to increase the ad damnum clause."); Wright & Miller, *Federal Practice and Procedure* § 1255 ("Under Federal Rule of Civil Procedure 54(c), except in default judgment cases, the district court may grant any relief to which the evidence shows a party is entitled, even though that party has failed to request the appropriate remedy or remedies in his pleading."). Rule 54(c) of the Federal Rules of Civil Procedure provides that except as to a party against whom a judgment is entered by default, "every other final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." Fed. R. Civ. P. 54(c). A party, however, "will not be given relief not specified in its complaint where the failure to ask for particular relief so prejudiced the opposing party that it would be unjust to grant such relief." *Baker v. John Morrell & Co.*, 382 F.3d 816, 831 (8th Cir. 2004).

With FTCA cases such as this one, however, a plaintiff is generally limited to the sum certain set forth in his administrative claim. 28 U.S.C. § 2675(b). The purpose of this limitation is to "ensure[] that '[t]he government will at all relevant times be aware of its maximum possible exposure to liability and will be in a position to make intelligent settlement decisions." *Reilly v. United States*, 863 F.2d 149, 173 (1st Cir. 1988) (quoting *Martinez v. United States*, 780 F.2d 525, 560 (5th Cir. 1986)); *see also Val-U Const. Co. of S.D., Inc. v. United States*, 905 F.Supp. 728, 739 (D.S.D. Sept. 29, 1995) (quoting *Allgeier v. United States*, 909 F.2d 869, 878 (6th Cir. 1990)) ("The manifest purpose of the sum certain requirements of § 2675 is to ensure that federal agencies charged with making an initial attempt to settle tort claims against the United States are given full notice of the government's potential liability."); S. Rep. No. 89-1327, at 2516 (1966) (noting that the fundamental purpose of requiring an administrative claim is "to ease court congestion and

avoid unnecessary litigation, while making it possible for the Government to expedite the fair settlement of tort claims asserted against the United States").

There are two exceptions to the express limitation that a plaintiff is restricted to the damages requested in his administrative claim. 28 U.S.C. § 2675(b). A plaintiff may exceed the amount presented in the administrative claim if (1) "the increased amount is based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency," or (2) "upon allegation and proof of intervening facts, relating to the amount of the claim." *Id.* The burden of establishing either of these exceptions rests with the plaintiff. *See Michels v. United States*, 31 F.3d 686, 689 (8th Cir. 1994), *aff'd*, 31 F.3d 686 (1994) ("[C]ourts have uniformly placed the burden of proving either intervening facts or newly discovered evidence on the FTCA claimant.").

Roemen argues that both exceptions apply in this case. Although Roemen had been experiencing leg pain since the injury, his Type V popliteal entrapment syndrome was not diagnosed until December 2019—after Roemen's administrative complaint was filed on May 7, 2018; after it was denied on December 3, 2018; and after Roemen filed his complaint in this federal case on January 14, 2019. Roemen received three popliteal artery entrapment release surgeries between December 2019 and December 2021. Roemen argues that although he was experiencing right leg pain at the time he filed his administrative complaint, it was not reasonably foreseeable at that time that he would suffer from Type V popliteal artery entrapment syndrome and chronic lymphedema. (Doc. 271 at 23880).

The United States argues that neither exception applies in this case. The United States argues that event if an administrative claimant has no duty to foresee the worst-case scenario, injuries alleged to be caused by the United States' negligence became reasonably foreseeable after Roemen received Dr. Reed's diagnosis of Type V popliteal artery entrapment syndrome, which, in this case was in December 2019. The United States argues that at the time Roemen received the diagnosis, he had an obligation to put the United States on notice and amend his administrative demand or complaint regarding the sum certain. (Doc. 267 at 23817).

"[W]hether the plaintiff is seeking an increase under the rubric of 'newly discovered evidence' or 'intervening facts,' one of the key issues is foreseeability." *Landrum v. United States*, Civ. No. 14-5088-JLV, 2018 WL 813623, at *1 (D.S.D. Feb. 9, 2018) (quoting *Lowry v. United*

6

*States*, 958 F.Supp. 704, 711 (D. Mass. 1997)). "[W]hile courts do not charge a claimant with knowing [what] the physicians could not tell him, the information must not have been discoverable through the exercise of reasonable diligence." *Id.* (quoting *Low v. United States*, 795 F.2d 466, 470 (5th Cir. 1986) (internal citation omitted)). "[W]hen existing medical evidence and advice put the claimant 'on fair notice to guard against the worst-case scenario' in preparing the administrative claim," no section 2675(b) exception applies." *Id.* (quoting *Michels v. United States*, 31 F.3d 686, 688 (8th Cir. 1994)). However, "a known injury can worsen in ways not reasonably discoverable by the claimant and his or her treating physician, and . . . such 'newly discovered evidence' or 'intervening facts,' if convincingly proved, can warrant § 2675(b) relief." *Id.* (quoting *Michel*, 31 F.3d at 688); *see also Beattie v. United States*, Civ. No. 97-916, 1998 WL 668042, at *12 n.45 (D. Minn. July 16, 1998) (citing *Michels*, 31 F.3d at 688) ("In this Circuit, recovery in a FTCA suit can exceed the amount of the claim presented to the agency for personal injury, if a plaintiff's known injury worsens in ways not reasonably discoverable by the plaintiff, and his or her treating physician, at the time that the claim was presented to the appropriate agency."). "Section 2675(b) contains an objective standard—'newly discovered evidence not *reasonably* discoverable.' " *Michels*, 31 F.3d at 689 (quoting § 2675(b)).

Dr. Reed diagnosed Roemen with Type V popliteal artery entrapment syndrome in December 2019—after Roemen had submitted the administrative complaint on May 7, 2018, after his administrative complaint was denied on December 3, 2018, and after Roemen filed this complaint in federal court on January 14, 2019.[1] As a result of this condition, Roemen had been experiencing pain when walking due to increased blood flow restriction to his right leg. (Docs. 241, Dr. Reed Dep. 17:1-21; 257-2, Trial Transcript at 570:1-4). Roemen underwent his first corrective surgery on December 31, 2019, and had returned to running and full exercise over the next year until he started to experience difficulty with tiredness and heaviness of the right leg which he saw Dr. Reed for in December 2020. (Doc. 241, Dr. Reed Dep. 20:10-19). Roemen underwent two more corrective surgeries on April 9, 2020, and in December 2021. After Roemen's third surgery, his artery was no longer entrapped and had returned to normal, yet Romen was

---

[1] Federal Regulations provide that an administrative claim may be amended "at any time prior to final agency action or prior to" claimant filing a complaint in federal court. 28 C.F.R. § 14.2(c). Roemen was diagnosed with Type V popliteal artery entrapment syndrome by Dr. Reed in December 2019 after Roemen's administrative claim was denied and after he filed his complaint in this action in federal court.

7

experiencing swelling, heaviness and aching in his right leg when standing or sitting for prolonged periods. (Doc. 241, Dr. Reed Dep. at 26:4-27:18; 35:12-36:35; 257-2, Trial Transcript 570:5-11; Trial Exhibit 118). After extensive testing, Dr. Reed could not identify another vascular issue causing these symptoms and opines that these symptoms are caused by lymphedema that developed after the incident and surgeries. (Doc. 241, Dr. Reed Dep. at 26:4-27:18, 36:10-25, 39:12-17; Trial Exhibit 118). Dr. Reed opines that Roemen's condition is chronic, and that future treatment will consist of physical modifications such as reducing amount of standing time on his feet. (Trial Exhibit 118).

This is not a worst-case scenario of a condition that Roemen knew about at the time he filed the administrative complaint. Roemen submitted his administrative complaint on May 7, 2018, it was denied on December 3, 2018, and he filed his complaint in federal court in this matter on January 14, 2019. There was no existing medical evidence and advice that Roemen had received before these dates that would have put him "on fair notice to guard against the worst-case scenario" in preparing or amending his administrative claim. *See Michels*, 31 F.3d at 688 (quoting *Reilly v. United States*, 863 F.2d 149, 172 (1st Cir. 1988)). Although Roemen had been experiencing some leg pain, numbness and swelling while walking and running prior to being diagnosed with Type V popliteal artery entrapment in December 2019, he sought massage therapy and other modalities to try and alleviate his symptoms. (Doc. 252-1 at 19869). When those measures did not provide relief, Roemen visited with a physical therapist in September 2019 who indicated that Roemen may be experiencing chronic exertional compartment syndrome. (Doc. 252-1 at 19871). Roemen received several referrals and underwent several tests which finally led to his diagnosis by Dr. Reed of Type V popliteal artery entrapment syndrome in December 2019. The Court finds that it was not reasonably foreseeable at the time he filed his administrative complaint in May 7, 2018, or before he filed his complaint in federal court in January 2019, that he would be diagnosed with Type V popliteal artery entrapment syndrome, would undergo three corrective surgeries that would ultimately resolve this condition, and that he would develop chronic lymphedema after his third surgery that would, as he testified, prevent him from standing for long periods of time necessary to perform flight safety checks as an aviation mechanic.

Although, under these facts, the FTCA does not preclude Roemen from increasing his damages claim above the amount detailed in his administrative complaint, the Court must still

consider what prejudice might result from such a late request to augment damages. "A party may not be entitled to relief under Fed. R. Civ. P. 54(c) "if its conduct of the cause has improperly and substantially prejudiced the other party." *Abermarle Paper Co. v. Moody*, 422 U.S. 405, 424 (1975).

In *Atlantic Purchasers, Inc. v. Airline Sales, Inc.*, 705 F.2d 712, 717 (4th Cir. 1983), the Fourth Circuit Court of Appeals stated that "a substantial increase in the defendant's potential ultimate liability can constitute specific prejudice barring additional relief under Rule 54(c)." The court in *Atlantic Purchasers* found that plaintiff's complaint gave no warning to defendant that it was seeking statutory treble damages if it successfully prosecuted its action such that it deprived the defendant of realistically appraising its case. *Id.* 717. The court noted that the treble damages relief plaintiffs sought pursuant to statute was an "unusual remedy" that went beyond "the general damages the law normally awards to compensate plaintiff for the injury he seeks to have redressed." *Id.* Accordingly, the court upheld the district court's refusal to treble the jury award. *Id.*

In contrast to *Atlantic Purchasers,* no unusual remedy is sought by Roemen in his request for additional damages. Instead, Roemen seeks, under the same theory of law as pleaded in his complaint, general damages that are frequently sought by personal injury plaintiffs in tort cases— damages for lost future earning capacity. As discussed above, damages for lost earning capacity are an element of general damages under South Dakota law.

The United States was made aware before trial that subsequent to Plaintiffs' motion to file their second amended complaint on March 31, 2021, in which Roemen claimed $1,000,000 in compensatory damages, that Roemen had developed chronic lymphedema after his third corrective surgery in December 2021. Specifically, the Government was informed during Dr. Reed's October 31, 2023, deposition that was received into evidence during the trial, of Dr. Reed's opinion that Roemen would likely have to live with this condition, and that it hindered his ability to perform jobs that require a lot of walking and standing. (Doc. 241, Reed Dep. 25:1-27:18). Before trial, the Government was also made aware in Dr. Reed's October 23, 2023, opinion letter that no future surgeries were recommended, that Roemen's lymphedema was chronic, and that future treatment for Roemen's condition will consist of physical modifications such as reducing amount of standing and time on his feet. (Trial Exhibit 118). Roemen testified at trial that his condition now prevents

9

him from standing for long periods of time necessary to perform flight safety checks as an aviation mechanic. Roemen seeks to increase his compensatory damages claim to $2,500,000 to account for lost future earning capacity.

As previously discussed, a primary reason for a stated claim amount is so the government can make a realistic appraisal of the case for settlement negotiations and for trial strategy. Liability was hard fought in the trial. The damages evidence from Roemen was not contested and the Government had an opportunity to cross examine the rather scant evidence Plaintiffs put in at trial on the loss of future earning capacity by Roemen. The Government did not perform an adverse medical examination of Roemen. For these reasons, the Court does not find that there is any prejudice of Defendants' trial strategy by now allowing this amendment. In addition, the Court is not aware of any settlement negotiations between the parties so there is no showing of any settlement evaluation prejudice to the Government.

The Court finds that the FTCA and the Federal Rules of Civil Procedure do not preclude Roemen from seeking damages for lost future earning capacity. Whether or not Plaintiffs have met their burden in proving such damages under South Dakota law is another matter which this Court will address on the merits in a subsequent opinion. *See Lockhart v. United States*, 834 F.3d 952, 955 (8th Cir. 2016) ("Under the FTCA, damages are determined according to the relevant state law.").

Accordingly, it is hereby ORDERED that Plaintiffs' Motion to Amend (Doc. 264) is GRANTED.

Dated this 2nd day of October, 2024.

BY THE COURT:

Lawrence L. Piersol
United States District Judge